# VICKSBURG *v.* VICKSBURG WATERWORKS COMPANY.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF MISSISSIPPI.

No. 133. Submitted December 13, 1905.—Decided May 21, 1906.

Where complainant's bill discloses an intention by the municipality to deprive complainant—a water supply company—of rights under an existing contract by subsequent legislation, and the city cannot show any inherent want of legal validity in the contract, or any such disregard of its obligations by complainant as would absolve the city therefrom, the case is one arising under the Constitution of the United States, the Circuit Court has jurisdiction, and a direct appeal lies to this court.

It is a valuable feature of equity jurisdiction to anticipate and prevent threatened injury, and in this case an injunction was properly issued to restrain a municipality from erecting its own water system during the continuance of an exclusive franchise owned by complainant.

As a general rule, and so held in this case, it is discretionary with, and under the control of, the trial court to permit the withdrawal by an intervenor of its original bill, and to strike out testimony taken concerning the same.

The power given under the state law to a corporation to mortgage its franchises and privileges necessarily includes the power to bring them to sale and make the mortgage effectual, and the purchaser acquires title thereto although the corporate right to exist may not be sold.

The laws of Mississippi, as construed by its highest court, do not prevent a municipality from granting an exclusive water supply franchise for a limited period during which it cannot erect and operate its own water system; and under the constitutional limitation that the legislative power to alter, amend and repeal charters of corporations must be exercised so that no injustice shall be done to stockholders, an act of the legislature authorizing the municipality to erect its own water system would not amount to repealing the exclusive features of an existing legal franchise.

While grants of franchises are to be strictly construed in favor of the public and nothing is to be taken by implication, where the city has, as in this case, by the terms of the contract given the grantee the exclusive right to erect, maintain and operate waterworks for a definite period it cannot, under the impairment clause of the Constitution, erect and operate, under ordinances subsequently enacted, its own water system during the life of the franchise and subject the company to that competition.

Courts have no power to issue a mandatory injunction requiring a mu-

nicipality to construct a sewer, in a particular manner irrespective of the exercise of discretion vested in the municipal authorities to determine the practicability of the sewer, the availability of taxation for the purpose, and like matters.

THE facts are stated in the opinion.

*Mr. J. C. Bryson, Mr. L. W. Magruder, Mr. H. C. McCabe* and *Mr. M. Dabney* for appellant:

The motion to dismiss must be denied. *Penn Mutual Life Ins. Co.* v. *Austin,* 168 U. S. 685; *Loeb* v. *Columbia Township,* 179 U. S. 472; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 544.

The Bullock contract was personal and not assignable, and the Supply Company had no power to assign the contract to the Waterworks Company and to compel appellants without their consent to look to it for its performance. The burden is on appellee to show such power or consent. *Matthews* v. *Board of Corp. Comm.,* 97 Fed. Rep. 400; *Thomas* v. *W. Jersey R. R.,* 101 U. S. 71; *Gibbs* v. *Gas Co.,* 130 U. S. 396; *St. Louis R. R. Co.* v. *Gill,* 156 U. S. 649; *Norfolk* v. *Pendleton,* 166 U. S. 667; *Adams* v. *Railroad Co.,* 180 U. S. 1; *Brunswick Gas Co.* v. *United Gas Co.,* 85 Maine, 535; *Commonwealth* v. *Smith* (Mass.), 87 Am. Dec. 672; *Chicago Gas Co.* v. *People's Gas Co.,* 2 Am. St. Rep. 124. But if the contract was assignable and passed to the Waterworks Company without the consent or approval of the appellant, it passed subject to the power of the State to regulate rates whenever it chose to do so, and regulating such rates would not impair complainant's contract. *Stone* v. *Trust Company,* 116 U. S. 636; *Providence Bank* v. *Billings,* 14 Pet. 514.

The State could abandon its governmental right and deprive itself of the power to regulate its corporations, but only by apt words about whose meaning there can be no doubt. The legislative grant by the State to the City does not evidence any purpose on the part of the State to deprive itself of the power to fix and regulate rates to be charged by the party or parties to whom the contract should be let. *Collins* v. *Sherman,* 31

Mississippi, 679; *Railroad Co.* v. *Stone,* 116 U. S. 307, 347; *Norfolk* v. *Pendleton,* 156 U. S. 667; *San Diego* v. *National City,* 174 U. S. 739; *Owensboro* v. *Water Co.,* 191 U. S. 358; *Water Co.* v. *Fergus,* 180 U. S. 624; *Stanislaus County* v. *San Joaquin Co.,* 192 U. S. 201; *Rushville* v. *Rushville,* 15 L. R. A. 321 and note, 322; *Water Co.* v. *Knoxville,* 189 U. S. 434.

Appellee can exercise no powers prohibited by the constitution and laws of Mississippi. Its charter was and is subject to alteration, repeal or amendment, and has been amended by the act of 1904. It cannot complain of any of these laws which were in existence when it accepted its charter. Its rights and privileges are fixed by these laws and the decree of the court which held, in effect, that they were not, is erroneous. *Gas Lt. Co.* v. *Hamilton,* 146 U. S. 258; *Norfolk* v. *Pendleton,* 156 U. S. 667; *Griffin* v. *Goldsboro* (N. Car.), 41 L. R. A. 240; *Redland* v. *Redland,* 121 California, 365; *Matthews* v. *Bd. of Corp. Comm.,* 97 Fed. Rep. 400; *Greenwood* v. *Union Frt Co.,* 105 U. S. 13; *Water Co.* v. *Newburyport,* 193 U. S. 562; *Water Co.* v. *Fergus,* 180 U. S. 702; *County of Stanislaus* v. *San Joaquin Co.,* 192 U. S. 202; *Turnpike Rd.* v. *Croxton,* 33 L. R. A. 177; *Y. & M. V. R. R. Co.* v. *Adams,* 180 U. S. 1, 26; *Walla Walla Water Case,* 172 U. S. 1.

Unless plainly expressed the city had no power to make an exclusive grant. No such purpose was intended or expressed. *Freeport W. W. Co.* v. *Freeport,* 180 U. S. 587; *Gas Lt. Co.* v. *Saginaw,* 28 Fed. Rep. 529; *Wright* v. *Nagle,* 101 U. S. 79; *Water Co.* v. *Greenville,* 7 So. Rep. 409; *Collins* v. *Sherman,* 31 Mississippi, 679; *Gaines* v. *Coates,* 51 Mississippi, 335; *Detroit Citizens' St. Ry. Co.* v. *Detroit Ry.,* 171 U. S. 48; *Brenham* v. *Water Works Co.,* 67 Texas, 542; *Knoxville W. W. Co.* v. *Knoxville,* 189 U. S. 434; *Helena W. W. Co.* v. *Helena,* 195 U. S. 383; *Long* v *Duluth,* 49 Minnesota, 290; *Gas Lt. Co.* v. *Hamilton,* 146 U. S. 258; *Water Co.* v. *Skaneateles,* 184 U. S. 354; *Smith* v. *Westerly,* 35 Atl. Rep. 526; *Water Co.* v. *Fergus,* 180 U. S. 624; *Walla Walla Water Case,* 172 U. S. 1.

Whether or not the city made a contract precluding itself

from building and operating its own waterworks must be determined by the language of the grant itself.

The words "exclusive right and privilege" were intended to apply to all third parties, as against whom the exclusive right and privilege was granted to construct and operate a waterworks. It is true the city could not by its contract exclude all third parties, because such a contract would have been a monopoly and would have been void for that reason, but it is possible that the contracting parties did not know the law in that regard. These words were never intended to be applied to the city of Vicksburg. If it had been the purpose of the parties to the contract to exclude the city from building and operating a waterworks of its own, apt words would have been used as was done in the case of *Walla Walla W. W. Co.* v. *Walla Walla,* 172 U. S. 1. In construing this language all doubts must be resolved in favor of the appellant and against the company; and so construed it does not preclude the city from constructing and operating a water works of its own. *S. W. Mo. Lt. Co.* v. *Joplin,* 191 U. S. 150; *Bienville W. W. Co.* v. *Mobile,* 175 U. S. 109; *S. C.,* 186 U. S. 212; *Freeport W. W. Co.* v. *Freeport,* 180 U. S. 587.

The decree of injunction as to the Washington street sewer is clearly erroneous. In the first place, it is not supported by facts, and in the second place, it is a transgression by the court of the authority reposed in a coördinate branch of the Government. It was held by this court at an early date that the judiciary could not in any manner interfere with the legislative or executive departments of the Government to restrain either from action or to compel action by either where any discretion is vested in either of the coördinates. *Mississippi* v. *Johnson,* 4 Wall. 475. See also Cooley, Const. Lim., 5th ed., 254.

Mr. *S. S. Hudson,* Mr. *Murray F. Smith* and Mr. *J. Hirsh* for appellee:

No appeal is authorized by law direct to the Supreme Court

from the District or Circuit Courts in this case under act of March 3, 1891. All questions of law involved in this case have. already been decided by this court in a former appeal. 185 U. S. 65. The appeal is frivolous and without color of merit and should be dismissed. *Whitney* v. *Cook,* 99 U. S. 607; *Hinckley* v. *Morton,* 103 U. S. 764; *Micas* v. *Williams,* 104 U. S. 556; *Swope* v. *Leffingwell,* 105 U. S. 3; *Chanute City* v. *Trader,* 132 U. S. 210.

The lower court's decree is strictly in accordance with the Supreme Court's mandate in the former appeal, and therefore the case should be dismissed. *A. M. Smelting Co.* v. *Billings,* 150 U. S. 29; *Mackall* v. *Richards,* 116 U. S. 45; *Stewart* v. *Soloman,* 97 U. S. 361; *Humphreys* v. *Baker,* 103 U. S. 736; *United States* v. *N. Y. Indians,* 173 U. S. 464; *Tyler* v. *L. C. Mine,* 97 Fed. Rep. 394; *In re Pike,* 76 Fed. Rep. 400; *Gregory* v. *Pike,* 77 Fed. Rep. 241. The prior decision is conclusive. *Illinois ex rel. Hunt* v. *Illinois C. R. Co..* 184 U. S. 77, 91.

Upon an appeal from proceedings under a mandate, directed to a lower court, nothing is before the court, but the proceedings subsequent to the mandate. *Himeley* v. *Rose,* 5 Cranch, 314; *Washington Bridge Co.* v. *Stewart,* 3 How. 424; *Tyler* v. *Magwire,* 17 Wall. 283; *The Lady Pike,* 96 U. S. 462; *Roberts* v. *Cooper,* 20 How. 481; *Cook* v. *Burnley,* 11 Wall. 677; *The Nuestra Sennora De Regla,* 108 U. S. 101; *Sizer* v. *Many,* 16 How. 103; *Supervisors* v. *Kennicott,* 94 U. S. 499; *Clark* v. *Keith,* 106 U. S. 465; *Chaffin* v. *Taylor,* 116 U. S. 572; *Thompson* v. *Maxwell Land &c. Co.,* 168 U. S. 456; *Bent* v. *Miranda,* 168 U. S. 471; *Illinois* v. *Illinois Central Railroad Company,* 184 U. S. 77, 91.

The power of the court to grant the injunction as to the sewer cannot be doubted. *Missouri* v. *Illinois,* 180 U. S. 208; *Mugler* v. *Kansas,* 123 U. S. 623; *Chapman* v. *Rochester,* 110 N. Y. 273.

If a municipal corporation by its system of constructing sewers renders an outlet necessary, it must provide one. *Evansville* v. *Decker,* 84 Indiana, 325; *Crawfordsville* v. *Bond,* 96

Indiana, 236; *Van Pelt* v. *Davenport,* 42 Iowa, 308; *Byrnes* v. *Cohoes,* 67 N. Y. 204; *Fort Wayne* v. *Coombs,* 107 Indiana, 75; *Llano* v. *Llano County,* 23 S. W. Rep. 1008; Wood on Nuisances, § 1032.

MR. JUSTICE DAY delivered the opinion of the court.

This case was before this court at the October term, 1901, and is reported in 185 U. S. 65. It was then here upon the question of jurisdiction, and it was held that it presented a controversy arising under the Constitution of the United States, such as gave the Circuit Court jurisdiction. There was no diversity of citizenship, and the bill was filed by the Vicksburg Waterworks Company, a corporation of the State of Mississippi, against the Mayor and Aldermen of the city of Vicksburg, a municipal corporation of the same State. In view of the full statement of the contents of the bill and the amended bill in the case, as reported in 185 U. S., it is unnecessary to repeat it. On the present appeal a motion to dismiss or affirm was made, which was passed, to be heard with the merits. We regard the decision of this court, when the case was here at the former term, as settling the question of jurisdiction, and affirmatively determining that upon the bill and amended bill the complainant alleged a case which involved the application of the Constitution of the United States and appealable to this court, within section 5 of the act of March 3, 1891, as amended. 26 Stat. 827.

The suit was brought by the Waterworks Company, claiming an exclusive right as against the city under a contract with it for the construction and maintenance for a period of thirty years of a system of waterworks, which exclusive contract, it was alleged, would be practically destroyed if subjected to the competition of a system of waterworks to be erected by the city itself, which was in contemplation under authority of an act of the legislature of Mississippi, authorizing the Mayor and Aldermen of the city of Vicksburg to issue bonds to the amount

of $375,000 to purchase or construct a waterworks system and
a sewer system, and for certain other purposes. That act,
among other things, required the vote of the electors of the
city upon the question of issuing bonds and constructing or
buying waterworks; an election was held, and it was voted by
a majority of the votes cast that the city should issue bonds
to the sum of $150,000 to purchase or construct waterworks
for the city. A resolution was passed by the municipal au-
thorities instructing the Mayor and Aldermen to notify the
Waterworks Company that liability was denied upon the con-
tract for the use of the waterworks hydrants, and that from
and after August, 1900, the city would pay a reasonable com-
pensation for the use of said hydrants. A bill was filed in the
Equity Court in Warren County, Mississippi, averring that the
original contract to which the Waterworks Company claimed
to have succeeded was null and void; that the Mayor and
Aldermen had exceeded their powers in making the contract
for thirty years; that rates charged to consumers were exorbi-
tant and illegal; that the Mayor and Aldermen at a meeting
held on November 5, 1900, had resolved that they no longer
recognized any liability under said contract; that the Vicks-
burg Water Supply Company (a former holder of said con-
tract) and the complainant had no rights in said contract, and
the city was entitled to have the same cancelled and annulled.
And it was held in 185 U. S. that the facts taken together pre-
sented something more than a case of mere breach of private
contract, and disclosed an intention and attempt by subse-
quent legislation of the city to deprive the company of its
rights under the existing contract, and it was said: "Unless
the city can point to some inherent want of legal validity in
the contract, or to some disregard by the Waterworks Com-
pany of its obligations under the contract as to warrant the
city in declaring itself absolved from the contract, the case
presented by the bill is within the meaning of the Constitution
of the United States and within the jurisdiction of the Circuit
Court as presenting a Federal question." And it was further

held that it was a valuable feature of equity jurisdiction to anticipate and prevent threatened injury, and the conclusion was reached that the allegations of the bill made a case for an injunction. The case was thus brought within section 5 of the act of March, 1891, as one in which the appeal is directly to this court. See also upon this point *Penn Mutual Life Insurance Co.* v. *Austin,* 168 U. S. 685. The motion to dismiss will be overruled.

Upon the case going back to the Circuit Court an answer was filed raising issues as to whether the complainant had accepted and performed the agreement in its contract to supply water to the city, and denying the right of the complainant to have and to own the contract and the authority of the city to make an exclusive contract, and detailing other matters not necessary to further set forth.

Certain questions of fact as to the character of the water supplied by the complainant, the pressure maintained and similar questions were decided by the Circuit Court in favor of the appellees. An examination of the record makes it sufficient for us to say that we find no reason for disturbing the conclusions of the Circuit Court upon these questions.

The decree in the court below was in favor of the Waterworks Company, maintaining its right to the contract for hydrant rentals and enjoining the city, during the period of the contract, from constructing a waterworks system of its own, and requiring the city to construct a sewer for the disposal of house sewage from the city.

The assignments of error necessary to be considered are:

1. As to the alleged error of the court below in permitting a corporation known as the City Waterworks and Light Company, which had intervened in the case, to withdraw from the files its original bill in the nature of a supplemental bill, and striking out certain testimony which had been taken concerning the same.

2. In enforcing the contract with the city in favor of the complainant and restraining the city from erecting waterworks of

its own during the term covered by the contract with the complainant.

3. In requiring the construction of the sewer by the city.

We shall proceed to notice these in the order named.

The City Waterworks and Light Company, on December 2, 1903, filed its petition praying to be admitted as a party complainant in the cause, and set up that it was the owner of the contract sued upon. To this petition the city answered, denying that the City Waterworks and Light Company had purchased, by deed or otherwise, or owned the property, real and personal, of the complainant the Vicksburg Waterworks Company, and denying that the City Waterworks and Light Company had any interest in the subject matter of the suit or should be admitted as a party complainant therein. The City Waterworks and Light Company then filed its original bill in the nature of a supplemental bill, on May 5, 1904, after the city had denied that it had any interest in the suit. On May 13, 1904, it filed a motion asking leave to withdraw its petition and bill from the files, which motion was granted by the court, and the motion of the Vicksburg Waterworks Company to withdraw from the files its written consent to the filing of the bill was also sustained, and the court granted the withdrawal of the petition, bill, exhibits and written consent. Thereupon the city offered a supplemental answer, and asked the court for leave to file the same. This answer made allegations setting forth the transfer of the contract to the City Waterworks and Light Company, and asked for a continuance of the cause, with leave to take testimony to support the averments of this supplemental answer. The court, on the same day, May 13, 1904, overruled the city's motion for leave to file the supplemental answer and for continuance with leave to take testimony in support thereof, and proceeded to hear the case upon the original pleadings and proofs. It also permitted the withdrawal of certain testimony referring to the City Waterworks and Light Company and the transfer of the contract to it. In view of

the action of the court upon the pleadings as to the City Water-works and Light Company, this testimony had become immaterial.

In the action of the court just recited we can find no ground for a reversal. The City Waterworks and Light Company had come into the case claiming an ownership of the contract, which was denied by the city; certain testimony was filed concerning this claim of the company. We think it was discretionary with the court to permit the withdrawal of these pleadings and the suppression of this testimony, and it was likewise within its discretion to permit or deny a further answer by the city setting up the alleged transfer of ownership. These matters, except in cases of gross abuse of discretion, are within the control of the trial court. *Chapman* v. *Barney,* 129 U. S. 677, 681; *Dean* v. *Mason,* 20 How. 198, 204.

The principal controversy in the case is as to the correctness of the decree of the court below restraining the city from erecting waterworks of its own within the period named in the contract, which decree proceeded upon the theory that the city had excluded itself from erecting or maintaining a system of waterworks of its own during that period. The contract for the construction of the waterworks was originally made on November 18, 1886, by an ordinance of that date, granting to Samuel R. Bullock & Company, their associates, successors and assigns, the right and privilege to construct a waterworks system in the city of Vicksburg, for the period of thirty years from the date of the ordinance. Section 1 of the ordinance provided that, in consideration of the public benefit to be derived therefrom, the exclusive right and privilege was granted for the period of thirty years from the time the ordinance took effect, to Samuel R. Bullock & Company, their associates, successors and assigns, to erect, maintain and operate a system of waterworks in accordance with the terms of the ordinance, and of using the streets, alleys, etc., within the corporate limits of the city, as they then existed or might thereafter be extended, for the purpose of laying pipes and mains and other conduits,

and erecting hydrants and other apparatus for the obtaining of a good water supply for the city of Vicksburg and for its inhabitants, for public and private use. There was a stipulation for certain hydrants for the term of thirty years at an annual rental of $65.00 each, and it was provided that Bullock & Company, their associates, successors and assigns, might procure the organization of a waterworks company and assign their rights and privileges under the ordinance to such corporation. It is disclosed in the record that Bullock & Company procured the organization of a waterworks company, the Vicksburg Water Supply Company, which company executed a mortgage to the Farmers' Loan & Trust Company of New York, which included "All of its real and personal property, goods, chattels, owned now or which may hereafter be acquired by it, including its land, rents, waterworks, buildings, pump houses, stand pipes, reservoirs, machinery, pipes, mains, hydrants, apparatus and equipments, situated in the city of Vicksburg, county of Warren, State of Mississippi, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in any wise appertaining, and the reversion and reversions, remainder and remainders, tolls, rents, issues, income, profits accruing therefrom; also all and singular the corporate franchises, privileges, rights, liabilities which the Water Company now has and can exercise, or shall hereafter acquire and possess, and also all the estate, right, title, interest, property, possessions, claim and demand whatsoever, as well in law as in equity, of the Water Company, of and to the property above described or hereafter to be acquired, and each and every part and parcel thereof, with the appurtenances, to have and to hold all and singular the above granted and described premises with the appurtenances unto the trustee and its successors forever." Upon the foreclosure of this mortgage the property was bid off by M. O. Crumpler on the eighth day of August, 1900. He assigned his bid to the Vicksburg Waterworks Company, complainant in this case, and the Vicksburg Water Supply Company on October 18, 1900, by a quitclaim

deed, conveyed all the property, described in the deed of trust to the Farmers' Loan & Trust Company, to the Vicksburg Waterworks Company.

A preliminary question is made that the Vicksburg Waterworks Company did not acquire title to the contract rights by virtue of these proceedings. But we are cited to an act of the legislature of Mississippi, approved March 7, 1882, Laws of 1882, p. 50, which upon its face is broad enough to authorize such corporations to borrow money and secure the payment of the same by mortgage or deed of trust upon their property and franchises, and we think the mortgage in question would include the contract rights of the Vicksburg Water Supply Company, and that they would pass by the sale and subsequent quitclaim deed to the Vicksburg Waterworks Company. Where a company is authorized to mortgage its franchises and rights, these may be sold and the purchaser acquire title thereto at foreclosure sale, although the corporate right to exist may not be sold: *Memphis R. R. Co.* v. *Commissioners,* 112 U. S. 609. The power to mortgage the privileges and rights of the corporation must necessarily include the power to bring them to sale to make the mortgage effectual. *New Orleans &c. R. R. Co.* v. *Delamore,* 114 U. S. 501, cited and followed in *Julian* v. *Cent. Trust Co.,* 193 U. S. 93, 106. We think the mortgage in this case covered and the decree passed the contract rights given originally to the Vicksburg Water Supply Company by the ordinance of November 18, 1886.

It is further urged that the Vicksburg Waterworks Company was organized after the taking effect of the constitution of Mississippi of 1890, which provided: "Sec. 178. Corporations shall be formed under general laws only. The legislature shall have power to alter, amend or repeal any charter of incorporation now existing and revocable, and any that may hereafter be created, whenever, in its opinion, it may be for the public interests to do so; provided, however, that no injustice shall be done to the stockholders." And it is insisted that the subsequent legislative authority given to the city to issue bonds and

build its own waterworks amounted to a repeal of the exclusive feature of the grant in the ordinance of 1886, if any it contained. We are cited in support of that proposition to the case of the *Hamilton Gas Light & Coke Co.* v. *City of Hamilton*, 146 U. S. 258, considering the provisions of the constitution of Ohio as to altering or revoking corporate privileges. But we think the right of the Vicksburg Waterworks Company was acquired under the foreclosure and sale of the contract rights conferred in the ordinance of 1886 and covered in the mortgage, as we have stated. Furthermore, the Mississippi constitution contains this provision, which is not in the Ohio constitution considered in the *Hamilton* case, namely, "Provided, [in exercising the right of amendment or repeal of a charter] no injustice shall be done to the stockholders." If it be true that the complainant below had a binding contract excluding competition by the city in furnishing a water supply for the period of thirty years, we think it would be a palpable injustice to the stockholders to permit the competition of the city by new works of its own; which, whether operated profitably for the municipality or not, might be destructive of all successful operation in furnishing water to consumers by the private company.

Coming directly then to the question whether this is an exclusive contract, the question resolves itself into two branches. Had the city the right to make a contract excluding itself? And, if so, has the contract now under consideration that effect? The legislature of the State of Mississippi on March 8, 1886, in the charter of the city of Vicksburg, among others, gave to the city the following powers: "To provide for the erection and maintenance of a system of waterworks to supply said city with water, and to that end to contract with a party or parties who shall build and operate waterworks." The question is now, not whether the city might make a contract giving the exclusive right as against all third persons to erect a system of waterworks, but whether it can, in exercising this legislative power, exclude itself from constructing and operating waterworks for the period of years covered by the contract. It is

said the Supreme Court of Mississippi has denied this power, and we are referred to *Collins* v. *Sherman*, 31 Mississippi, 679; *Gaines* v. *Coates*, 51 Mississippi, 335, and *Greenville Water-Works Co.* v. *City of Greenville*, 7 So. Rep. 409.

We do not think any of these cases decisive of the point. In *Collins* v. *Sherman*, it was held that the charter granting the right to a turnpike and ferry company to maintain a ferry upon a particular river, which contained no grant of an exclusive right, did not prevent the legislature from afterwards incorporating another company authorized to establish a turnpike and ferry upon the same river and upon the same line of travel, although the establishment of the latter company might materially impair the value of the franchise granted to the first company. The cases were cited and the general principles stated that exclusive privileges could not be granted by implication; there was no attempt to make the first franchise exclusive in that case. In *Gaines* v. *Coates*, it was held that the act in question did not confer upon a certain corporation the exclusive privilege of weighing cotton; that there was nothing in the charter indicating any intention to confer an exclusive right, and many cases were cited, including a number from this court, to the effect that exclusive privileges are not to be granted by implication. In *Greenville Water-Works Co.* v. *City of Greenville*, the city of Greenville had made a contract with the Greenville Water-Works Company to build a system of waterworks by a certain time, but the company had failed to comply with the contract, the time was extended and the company again defaulted. The city thereupon cancelled the contract and made a new contract with the Delta Waterworks Company. Then the Greenville Water-Works Company filed a bill to enjoin the city and the other company from carrying out the contract and prayed for a specific performance of its contract with the city. The court held that there was no power given by the charter of the city of Greenville to grant a monopoly for a long series of years for supplying the city and its inhabitants with water. The question whether the city could

exclude itself in such a contract as we have now before us was not met or passed upon. But if the doctrine of Mississippi were otherwise, and with due respect to which the decisions of its highest court are justly entitled, it has been frequently held, in passing upon a question of contract, in circumstances such as exist in this case, involving the constitutional protection afforded by the Constitution of the United States, this court determines the nature and character thereof for itself. *Douglas* v. *Kentucky,* 168 U. S. 488. And we think the question of the power of the city to exclude itself from competition is controlled in this court by the case of *Walla Walla* v. *Walla Walla Water Company,* 172 U. S. 1. In that case the city charter of Walla Walla provided, section 10, that no exclusive grant should be made nor should prevent the council from granting the right to others, and section 11 provided: "The city of Walla Walla shall have power to erect and maintain waterworks within or without the city limits, or to authorize the erection of the same for the purpose of furnishing the city, or the inhabitants thereof, with a sufficient supply of water." The contract was made for twenty-five years. The grant was not made exclusive to the Waterworks Company, but the city agreed not to erect waterworks of its own, and reserved the right to take, condemn and pay for the works of the company at any time after the expiration of the contract. It was held by this court that the city might thus exclude itself from competition during the period of the contract, and of this feature of the contract the following pertinent language was used by Mr. Justice Brown, who delivered the opinion of the court:

"An agreement of this kind was a natural incident to the main purpose of the contract, to the power given to the city by its charter to provide a sufficient supply of water, and to grant the right to use the streets of the city for the purpose of laying water pipes to any persons or association of persons for a term not exceeding twenty-five years. In establishing a system of waterworks the company would necessarily incur a large expense in the construction of the power house and the

laying of its pipes through the streets, and, as the life of the contract was limited to twenty-five years it would naturally desire to protect itself from competition as far as possible, and would have a right to expect that at least the city would not itself enter into such competition. . . .

"Cases are not infrequent where, under a general power to cause the streets of a city to be lighted or to furnish its inhabitants with a supply of water, without limitation as to time, it has been held that the city has no right to grant an exclusive franchise for a period of years; but these cases do not touch upon the question how far the city, in the exercise of an undoubted power to make a particular contract, can hedge it about with limitations designed to do little more than bind the city to carry out the contract in good faith and with decent regard for the rights of the other party."

In the *Walla Walla* case the same general power to make the contract existed. There was an express provision against making an exclusive contract, and this court held that for the period mentioned in the contract, and as incident to the protection of the rights of the contractor, the city might exclude itself from competition. We think that case is decisive of the present one on this proposition.

We shall proceed to consider whether the language of the contract is such as to prevent the city, during the period named therein, from erecting a waterworks of its own.

The case of *Lehigh Water-Company's Appeal*, 102 Pa. St. 515, cited by counsel for appellant, is not in point. The act provided "the right to have and enjoy the franchises and privileges of such incorporation within the district or locality covered by its charter shall be an exclusive one; and no other company shall be incorporated for that purpose until the said corporation shall have, from its earnings, realized and divided among its stockholders, during five years, a dividend equal to eight per centum per annum upon its capital stock." Of this grant Mr. Justice Paxson, who delivered the opinion of the court, observed:

"While the language from the act of 1874 above quoted would seem to favor the exclusive right claimed by the water company, a careful examination of clause 3 of section 34 shows that the legislature intended that the right should be exclusive only as against other water companies, for immediately in this connection occur the words: 'And no other company shall be incorporated for that purpose until the said corporation shall have from its earnings realized and divided among its stockholders, during five years, a dividend equal to eight per centum per annum upon its capital stock.' The provision that another company shall not be incorporated was not intended to prohibit a city or borough from providing its citizens with pure water by means of works constructed by itself from money in its own treasury."

In considering this contract we are to remember the well-established rule in this court which requires grants of franchises and special privileges to be most strongly construed in favor of the public, and that where the privilege claimed is doubtful nothing is to be taken by mere implication as against public rights. This rule has been applied to a series of contracts in waterworks and lighting cases, and we have no disposition to detract from its force and effect. And unless the city has excluded itself in plain and explicit terms from competition with the Water-Works Company during the period of this contract it cannot be held to have done so by mere implication. The rule, as applied to waterworks contracts, was last announced in this court in *Knoxville Water Company* v. *Knoxville,* 200 U. S. 22, decided at this term, citing previous cases.

The contract in the respect under consideration is found in section 1 of the ordinance, and undertakes to give to Bullock & Company, their associates, successors and assigns, the exclusive right and privilege, for the period of thirty years, from the time the ordinance takes effect, of erecting, maintaining and operating a system of waterworks, with certain privileges named, for the furnishing of a supply of good water to the city of Vicksburg and its inhabitants, for public and private use.

Without resorting to implication or inserting anything by way of intendment into this contract, it undertakes to give by its terms to Bullock & Company, their associates, successors and assigns, the exclusive right to erect, maintain and operate waterworks, for a definite term, to supply water for public and private use. These are the words of the contract and the question upon this branch of the case is, conceding the power of the city to exclude itself from competition with the grantee of these privileges during the period named, has it done so by the express terms used? It has contracted with the company in language which is unmistakable, that the rights and privileges named and granted shall be *exclusive*. Consistently with this grant, can the city submit the grantee to what may be the ruinous competition of a system of waterworks to be owned and managed by the city, to supply the needs, public and private, covered in the grant of privileges to the grantee? It needs no argument to demonstrate, as was pointed out in the *Walla Walla* case, that the competition of the city may be far more destructive than that of a private company. The city may conduct the business without regard to the profit to be gained, as it may resort to public taxation to make up for losses. A private company would be compelled to meet the grantee upon different terms and would not likely conduct the business unless it could be made profitable. We cannot conceive how the right can be exclusive, and the city have the right at the same time to erect and maintain a system of waterworks, which may and probably would practically destroy the value of rights and privileges conferred in its grant. If the right is to be exclusive, as the city has contracted that it shall be, it cannot at the same time be shared with another, particularly so when such division of occupation is against the will of the one entitled to exercise the rights alone. It is difficult to conceive of words more apt to express the purpose that the company shall have the undivided occupancy of the field so far as the other contracting party is concerned.

The term "exclusive" is so plain that little additional light

can be gained by resort to the lexicons. If we turn to the Century Dictionary we find it defined to mean "Appertaining to the subject alone; not including, admitting or pertaining to any other or others; undivided; sole; as, an exclusive right or privilege; exclusive jurisdiction." We think, therefore, it requires no resort to implication or intendment in order to give a construction to this phase of the contract; but, on the other hand, the city has provided and the company has accepted a grant which says in plain and apt words that it shall have an exclusive right, a sole and undivided privilege. To hold otherwise in our view would do violence to the plain words of the contract, and permit one of the contracting parties to destroy and defeat the enjoyment of a right which has been granted in plain and unmistakable terms. On the authority of the *Walla Walla* case, the city had the power to exclude itself for the term of this contract, giving the words used only the weight to which they are entitled, without strained or unusual construction, and we think it was distinctly agreed that for the term named the right of furnishing water to the inhabitants of Vicksburg under the terms of the ordinance was vested solely in the grantee, so far at least as the city's right to compete is concerned. Any other construction seems to us to ignore the language employed and to permit one of the parties to the contract to destroy its benefit to the other. We think the court below did not err in reaching this conclusion.

The court decreed as to a sewer, which the record discloses was originally a surface-water sewer, that the city should refrain from permitting future connections therewith for the conveyance of house sewage. The company complaining that this sewer entered into the source of supply above the intake of the waterworks, the court by a mandatory injunction required the city of Vicksburg to extend the sewer and construct an outlet therefor, so as to discharge sewage into the Yazoo or Mississippi river, below the intake of the complainant, provided, if the city was unable to construct such sewer within

twelve months from date application might be made to the
court for an extension of time.   The error assigned in this be-
half is as to the award of the mandatory injunction.   We think
the court erred in this respect and that it had no authority to
issue a mandatory injunction requiring the city to construct a
sewer, irrespective of the exercise of discretion vested by law
in the municipal authorities to determine the practicability of
the sewer ordered, the availability of taxation for the purpose,
and the like matters; and we think that the exercise of this
authority is primarily vested in the municipality and not in
the courts.

We find no error in the decree of the Circuit Court enforcing
the contract rights of the complainant and enjoining the city
from erecting its own works during the term of the contract,
but error in granting a mandatory injunction as to the sewer,
and in that respect the decree will be modified, and, as so
modified,

*Affirmed.*


MR. JUSTICE HARLAN, dissenting.   I cannot agree to the
opinion and judgment in this case.

In my opinion the city of Vicksburg had no authority, un-
der the constitution and laws of Mississippi, to give an exclu-
sive right to any person or corporation to maintain a system
of waterworks for the benefit of that city and its people.

But if I am wrong in this view, it ought not, in my judgment,
to be held upon the present record that the city has, by ordi-
nance or otherwise, precluded itself from establishing and main-
taining, at its own expense, a system of waterworks for the
benefit of its people.   The contrary cannot be maintained, un-
less we hold that a municipal corporation may, by mere im-
plication, bargain away its duty to protect the public health
and the public safety as they are involved in supplying the
people with sufficient water.   Nothing can be more important
or vital to any people than that they should be supplied with

pure, wholesome water. And yet it is now held that it was competent for the city of Vicksburg, by mere implication, to so tie its hands that it cannot perform the duty which it owes in that regard to its people.