STREET *v.* TOWN OF RIPLEY.

(Division A. June 10, 1935.)

[161 So. 855. No. 31801.]

Oscar F. Street, of Ripley, for appellant.

S. N. Ayres, Jr., of Ripley, for appellee.

228

**Cook, J.,** delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Tippah county validating a proposed issue of revenue bonds, for the purposes of acquiring, improving, operating, and maintaining a waterworks system in and for the town of Ripley.

By chapter 317, Laws of 1934, the Legislature authorized municipalities within this state to acquire, improve, and operate certain revenue-producing systems, including waterworks and water supply systems, and to borrow money and issue revenue bonds for the purposes and by the procedure therein provided. By section 3 of this act, it was provided that any bonds issued there-

under "may contain such covenants and restrictions as may be necessary or desirable to safeguard the interests of the holders of the bonds," and that "it shall be plainly stated on the face of each such bond in substance that the same has been issued under the provisions of this act and that the taxing power of the municipality issuing the same is not pledged to the payment of such bond or interest thereon, and that such bond and the interest thereon are payable solely from the revenues of the system to acquire or improve which such bond is issued."

By section 6, it was provided, "That the powers conferred by this act shall be in addition to the powers conferred by any other law, general, special or local, and this act shall, without reference to any other statute or to any charter, be deemed full authority to purchase or improve and to own and operate the revenue producing systems by this act authorized to fix, maintain, and to collect rates for the facilities afforded by such systems, to issue and to sell bonds by this act authorized, and shall be construed as an additional and alternative method therefor, any provisions of the general laws of the state or of any charter to the contrary notwithstanding. Bonds may be authorized and issued under this act after submitting the proposition for the approval of same to the voters of the municipality at a special election called therefor according to law, and after a majority of the qualified electors voting at said special election have voted in favor of the proposed bond issue, but without regard to the restrictions, limitations or provisions of any other law, general, special or local. Where bonds have been authorized under this act it shall not be necessary to make publication of any ordinance, resolution, notice or proceeding relating thereto."

By section 2 (f) of this said act, municipalities were authorized and empowered "to enter into contracts with the United States of America or any agency thereof, un-

der the provisions of the national industrial recovery act and the regulations made in pursuance thereof, and under any further acts of the congress of the United States to encourage public works, for the sale of bonds issued in accordance with provisions of this act or for the acceptance of a grant to aid such municipality to acquire or improve any such system or to enter into contracts with any person or corporation public or private for the sale of such bonds; and such contracts may contain such terms and conditions as may be agreed upon by and between the municipality and the United States of America or any agency thereof, or any purchaser of such bonds.''

In pursuance of the authority granted by this act, the town of Ripley, through its governing authorities, entered into a loan and grant agreement with the United States of America, through the Public Works Administration of the National Recovery Act, to borrow and receive by loan and grant, not to exceed sixty-five thousand dollars, to purchase an existing private waterworks system and to improve and extend the same in certain specified respects, including the installation of fire hydrants and appurtenances necessary to fire protection in the town. This contract with the government is lengthy and contains many provisions in reference to the obligations of the government thereunder, and the protection of its rights and interests. Among other things, the government obligated itself to buy bonds issued by the municipality under, and in accordance with the form authorized by, chapter 317, Laws of 1934, to the amount of fifty-two thousand dollars, principal and accrued interest, which bonds should be ''Special obligations of the borrower payable, as to both principal and interest, solely from and secured by an exclusive pledge of a fixed amount of the gross revenues of the waterworks system of the borrower, including all future additions and improvements thereto, sufficient in amount each year to pay the principal of and interest on the bonds maturing

during such year, plus an additional twenty per centum of such annual payments as a Cushion Fund until said Cushion Fund equals the amount of principal and interest payments due during the next succeeding twenty-four months.''

The government further obligated itself to make, either in money or by cancellation of bonds, a grant of thirty per cent of the cost of labor and material used in the project, but in no event to exceed sixteen thousand dollars; and it was further provided that the government should be under no obligation to pay for any of the bonds or make any grant ''if the ordinance establishing rates shall not prescribe an annual rental for fire hydrants of not less than twenty-five dollars per hydrant, and if the borrower shall not validly obligate itself, in form satisfactory to the administrator, to take and pay out of its corporate funds for the fire protection service of not less than forty-four fire hydrants during the entire term of the loan.''

At a special meeting of the mayor and board of aldermen, called for that purpose, this agreement was ratified, approved, and adopted, and the mayor of the town of Ripley was duly authorized to execute the agreement, and afterwards it was executed by the mayor of the town and the Federal Emergency Administrator of Public Works.

After the execution of the loan agreement, the mayor and board of aldermen of the town of Ripley adopted a resolution declaring their intention to acquire, improve, operate and maintain a waterworks system in said town, and to issue revenue bonds to pay therefor, and submitting to the qualified electors of said town the question of whether or not such system should be acquired, improved, operated, and maintained, and such bonds issued. Among other things, this resolution declared it to be the intention of the mayor and board of aldermen to issue and sell waterworks revenue bonds of the said town in

the amount of fifty-two thousand dollars under the authority of chapter 317, Laws of 1934, for the purpose of paying a portion of the cost of acquiring and improving a waterworks system, and to issue and sell said bonds in strict conformity to the provisions of the aforesaid loan and grant agreement between the town of Ripley and the United States of America.

In pursuance of this resolution an election was duly and regularly called and held, and the report of the election commissioners, which was approved and adopted by the mayor and board of aldermen, showed that a majority of the qualified electors voting at such election had approved the issuance of said bonds.

Thereafter, at a special meeting of the mayor and board of aldermen, called for those purposes, an ordinance was regularly adopted fixing a schedule of rates for water and services to be rendered by the proposed waterworks system, and also an ordinance authorizing the acquirement, improvement, operation, and maintenance of a waterworks system, and the issuance and sale of revenue bonds in the amount of fifty-two thousand dollars to provide funds for those purposes. The ordinance establishing rates for water used fixed a flat charge of twenty-five dollars per year for each fire hydrant located in the town; and further provided that: ''No water or services shall be furnished or rendered free of charge to any person, firm or corporation whatsoever, and the town of Ripley, the county of Tippah, and the state of Mississippi and every agency, department and instrumentality thereof which uses any water or services from said waterworks system shall be charged and pay therefor at the rates fixed by this ordinance.''

The ordinance providing for the acquisition and maintenance of the proposed waterworks system is full, complete, and regular in form, and, among other things, provides that: ''In the event the town of Ripley or any department, agency, or instrumentality thereof, shall avail

itself of any facilities or services rendered by the system, the reasonable value of the facilities or services of said system shall be collected from said town, department, agency or instrumentality monthly as the same accrues. The revenues so derived shall be deemed to be revenues derived from the operation of the system and shall be deposited and accounted for in the same manner as other revenues of the system.'' It was further provided in section 16 (d) of the ordinance that, so long as any bonds were outstanding, the town of Ripley should ''take and pay for, out of its corporate funds, the fire protection service afforded by not less than forty-four fire hydrants at a minimum annual rental of twenty-five dollars per fire hydrant. Such fire hydrant rental shall be deemed to be revenues derived from the operation of the system and shall be deposited and accounted for in the same manner as other revenues of the system.''

The form of the proposed bonds, as set forth in the ordinance authorizing the issuance thereof, recites on its face that the bonds are issued under the authority of chapter 317, Laws of 1934, and that they are ''payable as to both principal and interest solely from the gross revenues derived from the operation of the waterworks system, including all improvements and additions thereto and extensions thereof, of said town of Ripley, does not constitute an indebtedness of the town of Ripley within any constitutional or statutory limitation, and the taxing power of said town of Ripley is not pledged to the payment of either the principal hereof or the interest hereon.''

A further resolution was adopted by the mayor and board of aldermen directing that proceedings be instituted under chapter 10, Code of 1930, for the validation of the proposed bonds, and for that purpose the clerk of the town was directed to prepare and transmit to the state bond attorney a complete certified transcript of all

orders, resolutions, and ordinances pertaining to the issuance of the proposed bonds.

After examining the transcript of the proceedings for the issuance of the bonds, the said bond attorney filed his opinion, in writing, to the effect that they were regular in all respects, and that the proposed bonds were legal and should be validated. Thereupon, the said transcript and opinion of the state bond attorney were filed with the chancery clerk of Tippah county, and proper proceedings, with notice to taxpayers, were instituted for the validation of the proposed bonds.

At the hearing of the proceedings for validation, the appellant, a taxpayer of the town of Ripley, appeared and filed objections to the validation of the proposed bonds, which were, in substance: (1) That under the provisions of chapter 10, Code of 1930, the chancery court had no authority to validate the proposed bonds; (2) that if the court had authority to validate said bonds, the necessary parties were not before the court; and (3) that section 16 (d) of the ordinance authorizing the issuance of the bonds was invalid, and for that reason the bonds should not be validated. In addition to the legal questions raised by the above-stated objections, the further question as to whether or not the validity of section 16 (d) of the ordinance might be determined in this validation proceeding arose by reason of the action of the court in overruling the appellee's motion to strike the objections to this provision of the ordinance; this motion being based upon the ground that said provision of the ordinance is an agreement collateral to the primary security for the bonds, which does not affect the validity thereof.

The appellant first contends that the chancery court has no jurisdiction or power to validate revenue bonds issued under the authority of chapter 317, Laws of 1934. Upon this point, he contends that since, at the time of the enactment of chapter 10, Code of 1930, the only form

of obligation then authorized to be issued by a county, municipality, or other district or subdivision of the state, was a general obligation for the payment of which the full faith, credit, and resources of the issuing body, including the taxing power, were pledged, the power conferred by this chapter to validate bonds only included bonds of that character, and that no power was thereby conferred to validate bonds, the security for the payment of which is limited to the revenues of a particular enterprise owned and operated by the issuing body or district. Chapter 10, Code 1930, was first enacted as chapter 28, Laws of 1917, Ex. Sess., and that act was amended by chapter 252, Laws of 1922, but in neither of these acts was the word "bond" defined. By chapter 32, Laws of 1928, entitled "An act to amend chapter 28 of the laws of the extraordinary session of 1917 as amended by chapter 252 of the Laws of 1922 so as to provide for the validation of bonds, certificates of indebtedness and other written obligations of counties, municipalities, . . . and such bonds and other obligations of any other district or subdivision authorized to issue bonds," the validation statute was further amended by defining the word "bond" or "bonds" in the following language: "The word 'bond' or 'bonds,' when used in this act shall be deemed to include every form of written obligation that may be now or hereafter legally issued by any county, municipality, school district, road district, drainage district, levee district, sea wall district and of any other district or subdivision whatsoever, as now existing or as may be hereafter created." Section 5.

This definition of the word "bond," as used in the validation act, was brought forward into chapter 10 of the Code of 1930 as section 315 of said Code, and its language is broad enough to, and necessarily does, include bonds of the character involved in this proceeding. The bonds that may be validated under the provisions of the

chapter are not limited to those that might be then legally issued; but it was thereby expressly provided that the bonds that may be validated shall include every form of written obligation that might be thereafter issued by any district or subdivision of the state. It is argued, however, that it was not the purpose of this chapter to authorize the validation of a proposed issue of bonds, payable only out of the revenues of municipal enterprises not then in existence, but to be created out of the proceeds of the bond issue itself. The main purpose of a statutory validation proceeding is to provide a forum and course of legal procedure to which a political district or subdivision may resort for the purpose of having the validity of the proposed bonds finally determined and adjudicated in advance of their issuance, "in order that the bonds so validated might be readily sold in the market, to create in the mind of the bond buyer a sense of security, in that by the decree of the court and the fiat of the Legislature there could be no further attack upon the validity of the bond issue." Love v. Mayor & Board of Aldermen of Yazoo City, 162 Miss. 65, 138 So. 600, 603.

In State v. City of Miami, 113 Fla. 280, 152 So. 6, 8, wherein there was involved a validation statute similar to ours, the same objection to the validation of certain waterworks revenue certificates, payable exclusively from the net revenues of the municipal waterworks of the city of Miami was interposed, and the Supreme Court of Florida held that the statutory authority to validate any bonds or certificates of indebtedness was broad enough to include "every form of proposed bonded debt, as well as every form of proposed certificate of indebtedness, negotiable or non-negotiable, limited or general, which a county, municipality, taxing district, or other political subdivision may undertake to issue under purported authority of law." And in discussing the purpose of validation proceedings, that court said: "The purpose of the

statutory validation proceedings is to provide a forum and a course of legal procedure to which any county, municipality, taxing district, or other political district or subdivision may resort for the purpose of determining whether or not any proposed obligation in the form of a bonded debt, or in the form of a certificate of indebtedness, may be validly issued by it in the form proposed in its ordinance, resolution, or other action taken under the law as the initiatory step for issuance of an obligation of that character. And in every such proceeding it is the intent of the statute that such judicial investigation of the pleaded validation proposal shall be made, that the court may determine therefrom whether or not that which is pleaded as petitioner's proposal is within the legal authority of the petitioner to do, so that, if it be adjudged valid, the validity thereof shall never again be subject to be called in question in any court in this state.''

Appellant advances the further argument that the fact that under the provisions of chapter 10, Code of 1930, notice is required to be given to taxpayers only, is evidence of an intention to only authorize the validation of bonds payable out of the general revenues of the taxing district, for the reason that otherwise taxpayers would have no direct financial interest in the issuance of the bonds, or, in other words, no interest different from that of the general public. It is not true that taxpayers of the district are not interested in the validation of a proposed issue of bonds for a public improvement of this character, which pledges the municipal revenues therefrom to a particular and definite purpose. Upon a proposal to validate an issue of bonds of this type, the taxpayers of a municipality are entitled to notice in order that they may have an opportunity to determine the extent to which their financial interest may be affected thereby and present their objections, if any they have. Furthermore, in the case at bar the taxpayers' financial

interests are directly involved, in that the ordinance authorizing the issuance of the bonds expressly obligates the municipality to pay, so long as any of the said bonds are outstanding, out of its general municipal funds, for all water and services furnished by the proposed water-works plant to the said municipality, and any of its departments, agencies, or instrumentalities; and also to pay out of its general funds the sum of one thousand one hundred dollars per year for fire protection, all these payments to be applied to the payment of the said bonds. We are of the opinion that the jurisdiction and power of the chancery court, conferred by chapter 10, Code of 1930, to validate bonds, clearly includes the bonds involved in this proceeding.

The appellant next contends that the decree of the court below is void for the reason that all the necessary parties were not before the court. No necessary party who was not before the court is pointed out. We have herein already referred to the direct financial interest of taxpayers in this proceeding, which entitled them to the notice required by the statute, and any interest of the general public resident in the municipality, as distinguished from the special financial interests of taxpayers, was represented by the municipality, acting through its duly constituted officers, which was a party to the proceeding. All necessary parties to the proceeding were properly joined.

The next question presented is whether or not the validity of section 16 (d) of the bond ordinance, which obligated the municipality in its governmental capacity to pay into a bond sinking fund a fixed sum as the reasonable value of fire protection to be afforded by a designated number of hydrants, may be determined in this proceeding. The entire net revenue from the operation of the proposed waterworks system is pledged for the payment of the proposed issue of bonds, and the collateral agreement embodied in the said section 16 (d) is

material to the security for the payment of these bonds; and the questions of law and fact to be decided in a statutory bond validation proceeding extend to whether or not the proposed bonds and the obligations created thereby, directly or indirectly, principally or collaterally, are within the authority of law, "so that whatever is decided by the court with reference thereto shall never again be subject to be called in question, in any court in this state." State v. Citrus County, 116 Fla. 676, 157 So. 4, 5. In determining the proper net revenue of a municipal enterprise, there is no apparent reason why the municipality in its governmental capacity may not pay to itself in its proprietary capacity the reasonable cost of services rendered by the enterprise to the municipality in the discharge of its governmental functions; and, consequently, we are of the opinion that it was within the power of the municipality to adopt section 16 (d) of the bond ordinance.

Finally, the appellant contends that if the municipality had the power and authority to enter into an agreement of the nature of that embodied in section 16 (d) of the bond ordinance, still the particular section is an unreasonable exercise of that power and authority, in that it binds the municipality to make the payments specified therein for an unreasonable length of time. The reasonableness of the number of fire hydrants which the municipality is thereby obligated to maintain, and the rate for serving these hydrants with water is not challenged; in fact, it is admitted that in this respect the ordinance is entirely reasonable. The ordinance obligates the municipality to maintain these hydrants and make the monthly payments therefor until all the bonds are retired. The last of the proposed series of bonds mature twenty-five years from the date of the ordinance, and it is argued that twenty-five years is an unreasonable length of time for a municipality to assume the obligation to maintain and pay for this fire protection.

In Light, etc., Co. v. City of Jackson, 73 Miss. 598, 644, 19 So. 771, a contract of the city with a private corporation to furnish water and fire protection for a period of twenty years was approved, while in the case of City of Vicksburg v. Vicksburg Waterworks Company, 202 U. S. 453, 26 S. Ct. 660, 50 L. Ed. 1102, 6 Ann. Cas. 253, the Supreme Court of the United States approved a similar contract for thirty years. The right to issue bonds payable serially over a period of twenty-five years cannot be questioned, and the right to contract to pay for service in aid of the maintenance of a sinking fund for the retirement of such bonds is coextensive with the right to issue them.

We find no error in the action of the court, and, therefore, this decree validating the proposed bonds will be affirmed.

Affirmed.