392 So.2d 252 (1980)
McCOY RESTAURANTS, INC., and Stephen Williams, Appellants,
v.
CITY OF ORLANDO, Florida, Acting by and through the Greater Orlando Aviation Authority, Appellee.
No. 59502.
Supreme Court of Florida.
December 24, 1980.
Charles Evans Davis of Fishback, Davis, Dominick & Bennett, Orlando, Stephen P. Kanar, Winter Park, Roberts, Miller, LaFace, Richard & Wiser, Tallahassee, and Robert W. Olsen, Orlando, for appellants.
Egerton K. van den Berg and J. Gordon Arkin of van den Berg, Gay & Burke, Orlando, for appellee.
*253 OVERTON, Justice.
This is a direct appeal from the trial court's final judgment validating certain public revenue bonds. We have jurisdiction[1] and affirm.
The revenue bonds under review concern the construction and expansion of new facilities at the Orlando International Airport. The Florida Legislature established the Greater Orlando Aviation Authority as an agency of the City of Orlando in 1957[2] and granted to the authority the power to issue revenue bonds in the city's name. In 1978, the authority issued $125,000,000 in revenue bonds for the expansion and improvement of facilities at Orlando International Airport, including a new terminal building. Bond repayment was to be solely through funds derived from the rental and lease of the airport's physical plant to various airlines, concessionaires, and others. The circuit court validated these bonds on July 14, 1978; no appeal was taken and the authority sold the bonds on September 20, 1978.
At the time the bonds issued, only four major airlines serviced the Orlando area. The proposed airport improvements reflected this factor in the number of airliners and estimated passengers the new facilities could accommodate. With federal aviation deregulation, six additional airlines sought to service Orlando and the use of the new facilities. The result was to render the yet incomplete improvements inadequate, and the aviation authority, in an attempt to compensate, enlarged the project. Misprojections in initial construction costs coupled with the project's enlargement resulted in considerable cost overruns. Obligated to complete the project[3] and to offset the additional expense, the authority sought to issue additional revenue bonds in the maximum amount of $169,275,000. This second bond issue, which is the subject of this review, would be in parity with the first and be satisfied with revenues from the same sources. The circuit court entered its final judgment validating the additional bonds on June 18, 1980. The state attorney participated in the trial court proceedings but has taken no part in the instant appeal.
McCoy Restaurants, Inc. and Stephen Williams, taxpayers and intervenors in the trial court and on this appeal, contend that (1) the airline-aviation authority agreements for the lease of the airport facilities unconstitutionally delegate the authority's powers to the private and beneficial use of the airlines; (2) the airline-aviation authority negotiations to modify the initial lease agreements so to accommodate the additional bonds violated Florida's government-in-the-sunshine law;[4] and (3) the trial court's actions inconsistently favoring the authority's position for validation denied the state a fair trial.
We find that appellants' first point concerning the validity of the lease agreement is clearly a collateral issue and not properly the subject of a bond validation proceeding. The sole purpose of a validation proceeding is to determine whether the issuing body had the authority to act under the constitution and laws of the state and to ensure that it exercised that authority in accordance with the spirit and intent of the law. State v. City of Miami, 379 So.2d 651 (Fla. 1980); State v. Sarasota County, 372 So.2d 1115 (Fla. 1979); State v. City of Sunrise, 354 So.2d 1206 (Fla. 1978). As the Court stated in State v. City of Miami, 103 So.2d 185 (Fla. 1958):

*254 It was never intended that proceedings instituted under the authority of this chapter to validate governmental securities would be used for the purpose of deciding collateral issues or those other issues not going directly to the power to issue the securities and the validity of the proceedings with relation thereto.
Id. at 188. Accord, State v. Sunrise Lakes Phase II Recreation District, 383 So.2d 631 (Fla. 1980); City of Gainesville v. State, 366 So.2d 1164 (Fla. 1979).
In the instant case, appellants are contesting the validity of the airline-aviation authority lease agreements, which we find to be a collateral issue to the bond validation proceeding. The airlines and other interested parties are not parties to this action, and the trial court has no jurisdiction to determine the validity of the leases in this type of proceeding. See State v. Sunrise Lakes Phase II Recreation District.
By their second point, appellants contend that the airlines, because of the airline-aviation authority lease agreements, were public representatives and as such were precluded by the sunshine law from caucusing among themselves in closed sessions. We find this contention, under these circumstances, to be without merit. We note that there is no allegation that the authority as a body or its officially designated members met in violation of the sunshine law, and the record supports a finding that the authority followed the law in its final approval of the bond resolution.
We find no merit in appellants' third point concerning a denial of fair trial. The judgment of the trial court is affirmed to the extent that it validates the revenue bonds under review.
It is so ordered.
SUNDBERG, C.J., and BOYD, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
ADKINS, J., dissents with an opinion.
ADKINS, Justice, dissenting.
I dissent.
The decision of the majority leaves open the question of the legality of the leases. The main purpose of a validation proceeding is to create in the mind of the bond buyer a sense of security, in that there could be no further attack upon the validity of the bond issue. Street v. Town of Ripley, 173 Miss. 225, 161 So. 855 (1935); State v. Citrus County, 116 Fla. 676, 157 So. 4 (1934). The leases are clearly illegal in delegating a public power of the Authority to private parties, the airlines. By failing to consider this question the Court has created a sense of uncertainty in the mind of the bond buyer.
In my opinion the validity of the Airline-Aviation Authority lease agreements is not a collateral issue to the bond validation proceeding. Each case must be considered on its facts to determine whether an issue is collateral. Here the question of the use of the proceeds of the bonds, never a collateral issue, is directly controlled by the leases. In order to give security to the bond buyer and terminate the litigation, this Court should reach the question.
The bond financing program under consideration consists of a commitment of the revenues from the airport operation with an agreement by the airlines that landing fees were to be adjusted annually in order to have revenue equal the various cash expenses and commitments with any shortfall made up by adjusting the landing fees in future budgeting periods. The agreements grant to the airlines control over many decisions of the Authority with respect to operations of the airport and collection and expenditure of funds. The agreements provide for exercise of the airlines' power by a "majority in interest" (MII) consisting of a vote by the various airlines serving the airport weighted on the basis of number of passengers.
The bond involved have, as their security and source of revenue, the leases. The bonds are based upon and are a part and parcel of the leases; and the leases are based upon and are a part and parcel of the bonds.
This Court has held that, if the validity or status of municipal bonds depends on the validity of assessments, such assessments could be attacked in proceedings to validate *255 bonds. City of Ft. Myers v. State, 95 Fla. 704, 117 So. 97 (1928). See also Folks v. Marion County, 121 Fla. 17, 163 So. 298 (1935); 64 Am.Jur.2d; Public Securities and Obligations, § 472, p. 496. Under the circumstances in this case the validity of the lease agreements is not a collateral issue to the bond validation proceeding. The lack of diligence in disposing of this matter by ignoring the issue concerning the validity of the leases will result in much further delay.
In my opinion the attempted delegation of power by the Authority to the airlines is repugnant to the due process clause of the Fourteenth Amendment to the United States Constitution. Washington ex rel. Seattle Title Trust Co. v. Roberge, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928). This Court has held that public legislative-type decisions must be made by public agencies, not private persons who act not in behalf of the public, but in their own interest. In State ex rel. Taylor v. City of Tallahassee, 130 Fla. 418, 177 So. 719 (1937), the Court considered whether it was lawful for the city of Tallahassee to require as a condition for the opening and operation of a pool hall, the obtaining of permission from its neighbors. The Court held that the city had the power to determine whether or not a pool hall could be opened, but by attempting to grant private persons (the neighbors) the power to decide whether that pool hall could be opened and operated was an unlawful grant of a veto power to private people. See also Amara v. Town of Daytona Beach Shores, 181 So.2d 722 (Fla. 1st DCA 1966).
The validity of the lease agreements has not been determined in this proceeding. Before the bonds are sold this question must be determined by the courts, as these matters may be raised even after the bonds have been validated. See State v. Town of Belleair, 125 Fla. 669, 170 So. 434 (1936).
In secret meetings the airlines exercised their right to approve or veto actions of the Authority regarding the operation, expansion, and financing of the airport facilities, amendments to the 1978 agreements, terms of the 1980 agreements, what new public facilities would be built, the cost of such construction, the issuance of the bonds herein at issue, and, in general, the operation of the airport serving the city of Orlando. Section 286.011, Florida Statutes, (Florida Government in the Sunshine) requires that the decision-making of a public agency be done in public. In this case, the leases delegate to the airlines the actual decision-making power. The decision with respect to whether and under what terms to issue the 1980 bonds was actually made by the airlines in private. The Government in the Sunshine law has been held applicable to advisory boards appointed to assist state governmental agencies. Town of Palm Beach v. Gradison, 296 So.2d 473 (Fla. 1974). The essential decision-making processes were in the hands of the airlines and the decisions themselves were made, not in public meetings, but either by private telephone conversations among airline officials or in meetings from which the public, the Authority, the press, and members of the staff were excluded, or which took place in secret prior to or during a recess in negotiating committee meetings. All steps in the decision-making process which involve public matters must be "in the Sunshine".
In my opinion the bonds should not be validated for two reasons:
1) The lease agreements, which are an integral part of the funding process, are illegal in that they exceed the bounds of lawful delegation of control over public property to private interests;
2) The funding package was negotiated and decided upon in private meetings in violation of the Florida Government in the Sunshine law.
A happier and more expeditious method of determining this litigation would be a deletion of the illegalities from the financing package as a condition of the bond validation and affirm the balance. This would neither delay nor prevent useful completion of the project. As the litigation now stands, another suit will have to be filed to invalidate the illegal leases.
NOTES
[1] Art. V. § 3(b)(2), Fla. Const.
[2] Chapter 57-1658, Laws of Florida, created the Greater Orlando Port Authority whose jurisdiction included aviation. The Florida Legislature subsequently amended chapter 57-1658 to change the authority's name to the "Greater Orlando Aviation Authority." Ch. 75-464, Laws of Fla.
[3] Delta Airlines, one of the initial four, brought a diversity action in United States District Court to require the aviation authority to proceed with the completion of the new airport facilities. The court, in a memorandum opinion, ordered the authority to issue additional revenue bonds in an aggregate amount sufficient to complete the project. Delta Airlines, Inc. v. Greater Orlando Aviation Auth., No. 80-F-Orl-Civ-Y (M.D.Fla. Jan. 28, 1980).
[4] § 286.011, Fla. Stat. (1979).