The Honorable Bruce H. Colton State Attorney Nineteenth Judicial Circuit 411 South Second Street Fort Pierce, Florida 34950
Dear Mr. Colton:
You ask substantially the following questions:
1. In light of the decision of the Fifth District Court of Appeal in News-Journal Corporation v. Memorial Hospital-West Volusia,Inc.,[1] is the board of directors of the Indian River Memorial Hospital, Inc., subject to the Government in the Sunshine Law?
2. If the not-for-profit corporation is subject to the Government in the Sunshine Law, do the members of the corporation's board of directors constitute "public officers" as that term is used in section 286.011(3)(a), Florida Statutes?
3. Does the exemption afforded by section 286.011(8), Florida Statutes, for "pending litigation" apply when no lawsuit has been filed but the parties involved believe litigation is inevitable?
In sum:
1. Based upon the decision of the Fifth District Court of Appeal in News-Journal Corporation v. Memorial Hospital-West Volusia,Inc., the board of directors of the Indian River Memorial Hospital, Inc., is subject to the Government in the Sunshine Law.
2. The directors of the corporation's board of directors constitute "public officers" as that term is used in section286.011(3)(a), Florida Statutes.
3. The exemption afforded by section 286.011(8), Florida Statutes, for "pending litigation" does not apply when no lawsuit has been filed even though the parties involved believe litigation is inevitable.
Question One
You state that the Indian River County Hospital District was formed by a special act of the Legislature in 1961.[2] In 1984, the special act was amended to permit the district to lease the hospital facilities to a third party and, since May 1985, the Indian River Memorial Hospital, Inc., has operated the hospital facilities under a lease from the district.[3]
In examining the applicability of the Sunshine Law to private organizations, the courts have generally considered whether there has been a delegation of the public agency's governmental or legislative functions or whether the private organization plays an integral part in the public agency's decision-making process.[4]
Because much of the litigation involving application of the open government laws to private organizations has been in the area of public records, however, the courts have frequently looked to Chapter 119, Florida Statutes, in determining the applicability of the Sunshine Law.[5]
As the courts have emphasized in analyzing Chapter 119, Florida Statutes, to agencies under contract with governmental entities, the mere receipt of public funds by a private corporation is not, standing alone, sufficient to bring the organization within the ambit of the open government requirements. Thus, the Supreme Court of Florida, in News and Sun-Sentinel Company v. Schwab, Twitty Hanser Architectural Group, Inc.,[6] set forth various criteria to be considered in determining whether a private entity is subject to the Public Records Law.
In Attorney General Opinion 91-99, this office reviewed the relationship between the Indian River County Hospital District and the Indian River Memorial Hospital, Inc., under a lease providing that the corporation would comply with the Sunshine and Public Records Laws when engaged in the operation and management of the hospital. Based upon the lease and using the Schwab criteria, this office concluded that the private corporation was subject to section 286.011, Florida Statutes, when engaged in the operation and management of the public hospital; however, it was not, by virtue of the lease, subject to the Sunshine or Public Records Laws when conducting business as a private organization unrelated to the lease agreement and when not acting on behalf of, or at the direction of, the hospital district.
Recent decisions by the courts, however, have broadened the test used to determine whether the open government laws apply to a private entity, focusing on whether the private entity is merely providing services to the public agency or is standing in the shoes of the public agency. For example, the court in Stanfield v.Salvation Army,[7] in holding a private corporation subject to Chapter 119, Florida Statutes, noted that a private corporation taking over the county's role as the provider of probation services "was not the provision of architectural services as inSchwab, but the complete assumption of a governmental obligation. Rather than providing services to the county, the Salvation Army provided services in place of the county."
The Fifth District Court of Appeal in News-Journal Corporation v.Memorial Hospital-West Volusia, Inc.,[8] reviewed the Schwab
factors as they applied to the relationship between a hospital authority and the not-for-profit company leasing the public hospital's facilities. The court recognized a distinction between a contract in which the private entity provides services to a public body and a contract in which the private entity provides services in place of the public entity:
"If one merely undertakes to provide material — such as police cars, fire trucks, or computers — or agrees to provide services — such as legal services, accounting services, or other professional services — for the public body to use in performing its obligations, then there is little likelihood that such contractor's business operation or business records will come under the open meetings or public records requirements. On the other hand, if one contracts to relieve a public body from the operation of a public obligation — such as operating a jail or providing fire protection — and uses the same facilities or equipment acquired by public funds previously used by the public body then the privatization of such venture to the extent that it can avoid public scrutiny would appear to be extremely difficult, regardless of the legal skills lawyers applied to the task."[9]
The district court reversed the lower court's holding that the not-for-profit company was not subject to the Public Records Law and the Government in the Sunshine Law.[10] The Supreme Court of Florida has accepted review and the case is currently on appeal before that Court.[11] This office has relied on the analysis utilized by the West Volusia court; in Attorney General Opinion 97-49, this office concluded that the not-for-profit foundation operating a municipal hospital was subject to the Sunshine and Public Records Laws.
In the instant inquiry, the hospital district, while not creating the corporation, did play a role in its formation since it required its formation in order to transact the lease. As in WestVolusia, the lease of hospital property that had been acquired with public funds appears to have constituted a substantial level of public funding and created a substantial financial interest in the venture for the hospital authority. The activities took place on publicly owned property and the private corporation performed a service that would otherwise be provided by the hospital district, thus functioning for the benefit of the authority by providing such services.
Applying the analysis of the court in News-Journal Corporation v.Memorial Hospital-West Volusia, Inc., supra, to the instant inquiry, it appears that the not-for-profit corporation would be required to hold its meetings in the sunshine.[12] To the extent previous opinions of this office are inconsistent, they are hereby modified to reflect recent judicial analysis.
Question Two
You ask whether the corporation's directors are "public officers" within the meaning of section 286.011(3)(a), Florida Statutes, which provides that "[a]ny public officer who violates any provision of this section is guilty of a noncriminal infraction, punishable by fine not exceeding $500."[13]
I am not aware of any appellate court decision on this matter, nor have you advised me of any such decision. This office has not previously recognized such a distinction.[14] A review of the legislative history surrounding the adoption of this language provides little insight as to the Legislature's intent. The courts have stated, however, that when public officials have delegated their authority to others, those delegated that authority stand in the shoes of such public officials insofar as application of the Government in Sunshine Law is concerned.[15]
As the decision of the district court in News-Journal Corporationv. Memorial Hospital-West Volusia, Inc., supra, makes clear, the not-for-profit corporation has relieved the hospital district from the operation of a public obligation and therefore stands in the shoes of the public entity. Thus, in my opinion, members of the board of directors of the not-for-profit corporation have taken the place of the district's governing body in carrying out that function and, therefore, constitute "public officers" within the meaning of the Sunshine Law.
Question Three
Florida requires governmental entities to conduct their business at open public meetings. In 1993, however, the Legislature created a limited exception for attorney-client discussions. Section286.011(8), Florida Statutes, provides that notwithstanding the provisions of subsection (1) and provided that the enumerated conditions are met,
"any board or commission of any state agency or authority or any agency or authority of any county, municipal corporation, or political subdivision, and the chief administrative or executive officer of the governmental entity, may meet in private with the entity's attorney to discuss pending litigation to which theentity is presently a party before a court or administrativeagency. . . ."[16] (e.s.)
Prior to the enactment of this exemption, no attorney-client privilege for governmental agencies was recognized and the Sunshine Law had been construed to apply to all meetings between governmental agencies and their attorneys conducted for the purpose of discussing settlement of pending litigation.[17]
In creating a limited attorney-client exemption, section286.011(8), Florida Statutes, refers to pending litigation to which the entity is presently a party before a court or administrative agency. The term "presently" is defined by Black's Law Dictionary as "[i]mmediately; now; at once" while "pending" is defined as:
"Begun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; in process of settlement or adjustment. Thus, an action or suit is "pending" from its inception until the rendition of final judgment."[18]
You refer to the decision of the Fourth District Court of Appeal in Brown v. City of Lauderhill,[19] in which the court held that the term "presently" did not mean "now" as a precise point in time but applied to a time period from now into the immediate future, that is, a short while. Thus the court held that although the city was not a nominal party in the attorney's fee litigation with its counsel at the time of the meeting with its counsel, its interest dictated that it would soon be involved in any litigation necessary to protect or enforce its interest in the fee.
Unlike the instant inquiry, however, Brown involved a situation where there was ongoing litigation. While the mayor was the nominal party in the proceedings, the court recognized that the city was the real party in interest on the attorney's fee claims and thus could meet in executive session with the attorney to discuss the claim. In the instant inquiry, however, there is no litigation filed, only the threat of litigation. Accordingly, I am of the view that the Brown decision is distinguishable and is not dispositive of this issue.
The courts have held that the Legislature intended a strict construction of the exemption afforded by section 286.011(8), Florida Statutes.[20] For example, the First District Court of Appeal in School Board of Duval County v. Florida PublishingCompany[21] concluded that the purpose of the amendment was to permit "any governmental agency, its chief executive and attorney to meet in private if the agency is a party to litigation and the attorney desires advice concerning settlement negotiations or strategy." (e.s.) In keeping with such a construction, this office recently stated in Attorney General Opinion 98-06 that the purpose of such meetings is to allow the attorney to seek direction and information from the governmental entity regarding the litigation.
Had the Legislature intended to extend the exemption to include impending or imminent litigation as well as pending litigation, it could have easily so provided. For example, the Legislature in section 119.07(3)(l)1., Florida Statutes, clearly indicated that the limited work-product exemption provided for therein applied not only to records "prepared exclusively for civil or criminal litigation or for adversarial administrative proceedings," but also to records that were "prepared in anticipation of imminent civil or criminal litigation or imminent adversarial administrative proceedings[.]"
In light of the above, I am of the opinion that the exemption afforded by section 286.011(8), Florida Statutes, for "pending litigation" does not apply when no lawsuit has been filed even though the parties involved believe litigation is inevitable.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] 695 So.2d 418 (Fla. 5th DCA 1997).
[2] Chapter 61-2275, Laws of Florida, as amended.
[3] See, Ch. 84-451, Laws of Florida.
[4] See, e.g., McCoy Restaurants, Inc. v. City of Orlando,392 So.2d 252 (Fla. 1980).
[5] See generally, Marston v. Gainesville Sun PublishingCompany, Inc., 341 So.2d 783 (Fla. 1st DCA 1976), cert. denied,352 So.2d 171 (Fla. 1977); Cape Coral Medical Center, Inc. v.News-Press Publishing Company, Inc., 390 So.2d 1216, 1218 n. 5 (Fla. 2d DCA 1980) (inasmuch as the policies behind Ch. 119 and s.286.011 are similar, they should be read together); Wood v.Marston, 442 So.2d 934, 938 (Fla. 1983); and Krause v. Reno,366 So.2d 1244 (Fla. 3d DCA 1979).
[6] 596 So.2d 1029 (Fla. 1992). The Schwab Court included such factors as: the level of public funding; commingling of funds; whether the activity is conducted on publicly-owned property; whether the services contracted for are an integral part of the public agency's decision-making process; whether the private entity is performing a governmental function; the extent of the public agency's involvement with, regulation of, or control over the private entity; whether the private entity was created by the public agency; whether the public agency has a substantial financial interest in the private entity; and for whose benefit the private entity is functioning.
[7] 695 So.2d 501, 503 (Fla. 5th DCA 1997).
[8] 695 So.2d 418 (Fla. 5th DCA 1997). In applying the Schwab
factors, the court found that while the hospital authority did not actually create the not-for-profit corporation, it played a role in its formation since it required its formation in order to transact the lease. While it was contended that the authority provided little or no financial investment in the venture, the court found that the lease of the hospital property which had been acquired with public funds constituted a substantial level of public funding and created a substantial financial interest in the venture for the hospital authority. The court further determined that the activities took place on publicly owned property and the private corporation performed a service that would otherwise be provided by the hospital authority and thus functioned for the benefit of the authority by providing such services. Finally, the court stated that while the hospital authority had no voting member of the corporation's board of directors, it had considerable control by virtue of the requirements of the lease and the performance standards established therein.
[9] Id. at 420.
[10] The West Volusia court also relied on Art. I, s. 24, Florida Constitution, which provides a constitutional right of access to public records and meetings. See, Monroe County v.Pigeon Key Historical Park, Inc., 647 So.2d 857 (Fla. 3d DCA 1994) (Art. I, s. 24, Fla. Const., which reaffirmed the Sunshine Law and extended its reach to every meeting of collegial public body at which public business is transacted or discussed would not be construed differently than sunshine law statute; although amendment elevated sunshine law protection to constitutional proportions, its language was virtually identical to that of statute).
[11] 700 So.2d 686 (Fla. 1997).
[12] Compare, House Bill 3585 and Senate Bill 1044, filed during the 1998 legislative session, which would create a new statute providing that a private corporation leasing a public hospital or other public health care facility for purposes of statutory and constitutional public records requirements unless specified conditions are met.
[13] Compare, s. 286.011(3)(b), Fla. Stat., providing that "[a]ny person who is a member of a board or commission or of any state agency or authority of any county, municipal corporation, or political subdivision who knowingly violates the provisions of this section by attending a meeting not held in accordance with the provisions hereof is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083." (e.s.)
[14] See, e.g., Op. Att'y Gen. Fla. 91-38 (1991) discussing the application of s. 119.10(1), Fla. Stat., containing the same language as s. 286.011(3)(a), Fla. Stat.
[15] See, e.g., News-Press Publishing Co., Inc. v. Carlson,410 So.2d 546 (Fla. 2d DCA 1982).
[16] Section 286.011(8), Fla. Stat., requires the following conditions be met in order to claim the exemption:
"(a) The entity's attorney shall advise the entity at a public meeting that he or she desires advice concerning the litigation.
(b) The subject matter of the meeting shall be confined to settlement negotiations or strategy sessions related to litigation expenditures.
(c) The entire session shall be recorded by a certified court reporter. The reporter shall record the times of commencement and termination of the session, all discussion and proceedings, the names of all persons present at any time, and the names of all persons speaking. No portion of the session shall be off the record. The court reporter's notes shall be fully transcribed and filed with the entity's clerk within a reasonable time after the meeting.
(d) The entity shall give reasonable public notice of the time and date of the attorney-client session and the names of persons who will be attending the session. The session shall commence at an open meeting at which the persons chairing the meeting shall announce the commencement and estimated length of the attorney-client session and the names of the persons attending. At the conclusion of the attorney-client session, the meeting shall be reopened, and the person chairing the meeting shall announce the termination of the session.
(e) The transcript shall be made part of the public record upon conclusion of the litigation."
[17] Neu v. Miami Herald Publishing Company, 462 So.2d 821
(Fla. 1985); and see, Staff of Fla.H.R.Comm. on Government Operations, CS/HB 491 (1993) Final Bill Analysis Economic Impact Statement 2 [hereafter Staff Analysis].
[18] Black's Law Dictionary, pp. 1066 and 1021 (5th ed. 1979), respectively.
[19] 654 So.2d 302 (Fla. 4th DCA 1995).
[20] City of Dunnellon v. Aran, 662 So.2d 1026 (Fla. 5th DCA 1995); School Board of Duval County v. Florida Publishing Company,670 So.2d 99 (Fla. 1st DCA 1996).
[21] Supra at 100. And see, Final Staff Analysis, supra, stating:
"This act simply provides a governmental entity's attorney an opportunity to receive necessary direction and information from the government entity. No final decisions on litigation matters can be voted on during these private, attorney-client strategy meetings. The decision to settle a case, for a certain amount of money, under certain conditions is a decision which must be voted upon in a public meeting."