## DISTRIBUTION OF PROPERTY OF AN INTESTATE AMONG NEPHEWS AND NIECES.

Court of Appeals for Madison County.

TREAT v. BESSEY ET AL.

Decided, July 25, 1913.

*Estates of Decedents—Descent of Non-Ancestral Lands of an Intestate— Next of Kin Nephews and Nieces—Distribution Per Capita.*

Where an ancestor dies seized of non-ancestral real estate, leaving as next of kin nephews and nieces and issue of a deceased 'niece, the inheritance descends per capita to the nephews and nieces, the issue of the one deceased taking a share by representation.

*David K. Watson* and *Chris. A. Weldon,* for Lincoln A. Weldon and Percy Howard.

*M. J. Sanford* and *George A. Allen,* contra.

ALLREAD, J.; FERNEDING, J., and KUNKLE, J., concur.

Marion Howard on January 1, 1912, died intestate, without issue and unmarried, seized in fee simple of non-ancestral real estate consisting of 1128 acres of land in Madison and Champaign counties, and leaving as next of kin Lincoln Weldon, only child of Mary Howard Weldon, a deceased sister; Percy Weldon, only child of Clinton Howard, a deceased brother, and William A. Howard, Belle Bessey, Mary Arter and Howard H. Treat (son of Emma F. Treat, deceased), children and representatives of Napoleon Howard, a deceased brother.

Lincoln H. Weldon and Percy Howard each claim one-third of the estate by right of representation. The other nephews and nieces and the representative of the one deceased claim that the distribution should be in equal shares.

The sole question, therefore, is whether the estate descends to the nephews and nieces *per stirpes* or *per capita.*

The claimants under the *per stirpes* theory rest upon subdivision 3 of Section 8574, General Code, providing that in the absence of issue and husband or wife relict "the estate shall pass

to the brothers and sisters of the whole blood, and their legal representatives.''

The *per capita* claimants rely upon Sections 8581, 8582, and 8583, General Code, which are as follows:

''Section 8581. When all the descendants of an intestate, in a direct line of descent, are of an equal degree of consanguinity to the intestate, whether children, grandchildren, or great-grandchildren, or of a more remote degree of consanguinity to such intestate, the estate shall pass to such persons of equal degree of consanguinity to such intestate in equal parts, however remote from the intestate such equal and common degree of consanguinity may be.

''Section 8582. If some of the children of such intestate are living, and others are dead, the estate shall descend to the children who are living, and to the legal representatives of such as are dead, so that each child of the intestate who is living will inherit the share to which he or she would have been entitled if all the children of the intestate were living, and the legal representatives of the deceased child or children of the intestate inherit equal parts of that portion of the estate to which such deceased child or children would be entitled if such deceased child or children were living.

''Section 8583. The provisions of the next preceding section shall apply in all cases in which the descendants of the intestate, entitled to share in the estate, are of unequal degree of consanguinity to the intestate, so that those who are of the nearest degree of consanguinity, will take the share to which he or she would have been entitled, had all the descendants in the same degree of consanguinity with him or her, who died leaving issue, been living.''

Standing alone, clause 3 of Section 8574 would probably justify the *per stirpes* distribution, but we think it clear that Section 8574 must be construed in harmony with Sections 8581, 8582 and 8583, and that Section 8574, being general, yields to Sections 8581, 8582 and 8583 in cases falling within the special provisions of the latter sections.

It is argued with great earnestness by counsel for the *per stirpes* claimants that the sections of statute last cited should be confined and limited to lineal issue and not extended to collateral descent.

We are not, however, called upon to construct an interpretation of this statute as of first impression. We have carefully compared Sections 8574, 8581, 8582 and 8583, General Code, with the corresponding sections of the act of 1853 and find no material difference in respect to the present controversy.

The case of *Ewers et al* v. *Follin*, 9 Ohio St., 327, decided under the act of 1853, is parallel and decisive. In that case it was held:

"By the provisions of the 10th section of the act regulating descents, passed February 24, 1831, when an estate descended to nephews and nieces, legal representatives of brothers and sisters, no brother nor sister of the intestate surviving, the nephews and nieces took *per capita;* and if a nephew or niece had died before the intestate, leaving children, such children took *per stirpes* the share of the deceased parent. This rule has not been altered by the fifth, sixth, seventh and eighth sections of the present act regulating descents."

Gholson, J., in the opinion, in analyzing Section 6 of the act of 1853 (now Section 8581, General Code), in respect to collateral descent, says:

"There is some ambiguity arising from the language employed in the sixth section, which has probably led to the reservation of the question in this case. It might, upon a first inspection of that section, be supposed that the 'descendants' to which it refers, were the lineal descendants only of the intestate, such as grandchildren and great-grandchildren; but a more careful examination shows the contrary. It will be seen that in the sixth section children as well as grandchildren and great-grandchildren are named, which, if the lineal descendants of the intestate alone are intended, would have been unnecessary, the children of the intestate having been provided for in the fifth section. The concluding language of that section also shows, that descendants, in the sense of those to whom the estate descends, were in the contemplation of the Legislature. Its provisions are to apply 'so that the estate shall pass to such persons of equal degree of consanguinity to such intestate in equal parts, however remote from the intestate such equal and common degree of consanguinity may be.'

"Our conclusion is, that the Legislature, instead of limiting the rule as provided in the tenth section of the act of 1831,

intended to extend and apply it to every case in which an estate was to be divided among a class of descendants, whether their consanguinity to the intestate be lineal or collateral.''

It is urged that the subsequent case of *Dutoit* v. *Doyle et al*, 16 Ohio St., 400, is inconsistent with and practically overrules *Ewers* v. *Follin*. In *Dutoit* v. *Doyle et al* there were surviving children and representatives of other children deceased. It was there contended that the grandchildren took *per capita* in the portion of the estate not taken by the surviving children. It was, however, held by the court that all took *per stirpes*. This decision is not, in our opinion, inconsistent with *Ewers* v. *Follin*, but at most a limitation of Section 6 of the act of 1853 to cases where the descendants are all of equal consanguinity, that is, all grandchildren and their representatives, or all nephews and nieces and their representatives, and like cases. No criticism or even reference to the case of *Ewers* v. *Follin* is found in the opinion in *Dutoit* v. *Doyle et al*, and our view that the authority of the former case over cases involving similar facts is not shaken or destroyed is confirmed by the fact that Scott, J., who wrote the opinion in the latter case, and Brinkerhoff, J., who concurred therein, also concurred in the decision and opinion in the former case. It is hardly conceivable that these eminent jurists would have overruled their former decision without some comment.

The cases of *Brower* v. *Hunt*, 18 Ohio St., 311, *Martin* v. *Martin*, 56 Ohio St., 333; *Mooney* v. *Purpus*, 70 Ohio St., 57, and *Miller* v. *Miller*, 15 C.C.(N.S.), 481, are cited, but we find nothing therein inconsistent with *Ewers* v. *Follin* as applied to cases falling within the special provisions of Section 6 of the act of 1853 (now Section 8581, General Code).

The case of *Miller* v. *Miller*, *supra*, involved the time of the vesting of a devise. The court having held that the estate vested at the death of the testator, when two of the brothers were surviving, very properly held that the estate descended *per stirpes*, in harmony with the authority of *Dutoit* v. *Doyle*.

In the case at bar, there being no children or husband or wife relict, and all the brothers having deceased prior to the death of

Marion Howard, leaving nephews and nieces and the representative of one deceased as the next of kin, the case falls clearly within the decision of *Ewers* v. *Follin.*

Counsel upon both sides have referred to various decided cases in other states. Some of these we have examined, but we do not deem it important to review the cases outside of the state, as we think the law of the present case is settled by *Ewers* v. *Follin.*

We have been very much interested in the presentation of this case in the investigation of the questions involved. The case has been fully and ably argued by counsel and the labor of the court very much reduced by their efforts. ·

The · conclusion of the court is that the estate descends *per capita* to the nephews and nieces, the plaintiff taking the share of his deceased mother.

Decree will be awarded accordingly.    ·