**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 8 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

SIGNATURE PROPERTIES
INTERNATIONAL LIMITED
PARTNERSHIP, a Delaware limited
partnership,

      Plaintiff - Appellant,

v.

CITY OF EDMOND, a municipal
corporation, Oklahoma County,
Oklahoma,

      Defendant - Appellee.

No. 00-6403

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-99-241-C)

---

Robert C. Smith, Jr. of Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City,
Oklahoma, (James S. Drennan of Monnet, Hayes, Bullis, Thompson & Edwards,
Oklahoma City, Oklahoma, with him on the briefs) for the Plaintiff-Appellant.

Richard J. Goralewicz and Carol Price Dillingham of Turner, Turner, Braun &
Goralewicz; of Oklahoma City, Oklahoma, (Kenneth W. Turner of Turner, Turner, Braun
& Goralewicz; Oklahoma City, Oklahoma and Stephen T. Murdock, City Attorney,
Edmond, Oklahoma, with them on the brief) for the Defendant-Appellee.

---

Before **BRISCOE**, **HOLLOWAY** and **MCWILLIAMS**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

# I

# INTRODUCTION

This appeal arises from a dispute between a real estate development firm and a municipality. Plaintiff/appellant Signature Properties purchased land in the town of Edmond, Oklahoma, defendant/appellee herein, which was part of a planned residential development called Oak Tree. A controversy developed over which party was responsible for improving or enlarging the sewer system for a part of the development that had been completed in previous years. After some period of maneuvering, Signature brought this suit in federal court alleging, *inter alia*, that the City had violated its constitutional property rights by preventing it from developing its land.

After trial to the court, the district judge granted declaratory relief to plaintiff on a state law claim, establishing that Edmond was responsible for the cost of improving the sewer system for the earlier developed portion of the land. The court rejected plaintiff's plea for an injunction and dismissed without prejudice plaintiff's claims for damages, holding that those claims were not ripe because there had been no final action by Edmond on which to base plaintiff's substantive due process claim. Plaintiff appeals.

Plaintiff Signature invoked the district court's jurisdiction under both 28 U.S.C. §§ 1331 and 1332, alleging that some of its claims arose under federal law and that diversity of citizenship provided an independent basis for jurisdiction over other claims. The

complaint also invoked the jurisdictional grant of 28 U.S.C. § 1343 as the case addresses

deprivation of Signature's civil rights guaranteed by the 5th and 14th Amendments.[1]  This

court's appellate jurisdiction is based on 28 U.S.C. § 1291.[2]

---

[1]We note that the complaint did not include adequate averments to support the claim of diversity jurisdiction which plaintiff-appellant Signature asserts as to Counts I, IV, V and VI.  Count I claims, *inter alia*, that Edmond is obligated by city ordinance and Oklahoma law to provide adequate sewage service for Oak Tree.  Again under state law, Count IV avers an obligation by the city under ordinance and Oklahoma law to provide access to the public sewer system for citizens within the city's jurisdiction.  Count V asserts a state constitutional violation of Article II § 7 of the Oklahoma Constitution - under statute and procedural due process - by arbitrary actions of the City of Edmond.

As to these state law counts we note that the plaintiff is a limited partnership and the citizenship of the general partner and each limited partner should have been pleaded because complete diversity as between the partners and the adverse party is required under 28 U.S.C. § 1332.  *See Penteco Corp. v. Union Gas System, Inc.*, 929 F.2d 1519, 1521-1523 (10th Cir. 1991).  Nevertheless, we conclude that it is not necessary under the circumstances of this case to either remand to the district court for a determination of diversity of citizenship or to permit an amendment of the complaint under 28 U.S.C. § 1653, the two alternatives discussed in *Penteco*.

The plaintiff properly invoked the jurisdiction of the district court under 28 U.S.C. § 1331 by pleading its federal constitutional claim.  The district court therefore had supplemental jurisdiction of the state law claims, which arose from the same nucleus of operative facts, under 28 U.S.C. § 1367 ("[T]he district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United Sates Constitution.").  We also note that the only issue defendant has raised concerning the district court's jurisdiction is the contention that this matter does not constitute a case or controversy on which federal jurisdiction may be based, a contention which we reject.

[2]Defendant/appellee Edmond does not challenge this court's jurisdiction.  The fact that most of plaintiff's claims were dismissed without prejudice does not create a jurisdictional impediment on appeal in these circumstances.  *See Landmark Land Co. v. Buchanan*, 874 F.2d 717, 720 (10th Cir. 1989) (fact that district court had dismissed only the complaint, not the cause of action, not a barrier to appellate jurisdiction where dismissal was based on conclusion that claims were not ripe); *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1209 n.1 (10th Cir. 2000) (dismissal with remand of state

## II

## A

### THE BACKGROUND OF THE OAK TREE
### DEVELOPMENT AND ITS SEWER PROBLEM

In 1974, an entity known as Unique Golf Concept, Inc. proposed the Oak Tree residential development as a "planned unit development" (PUD).[3] The project included two golf courses and a country club as well as planned residential areas. Landmark, the successor to the original developer, went into bankruptcy, and plaintiff Signature, the owner and developer of other projects combining golf courses and residential areas, purchased Oak Tree from the Resolution Trust Corporation (RTC) in 1994. The Oak Tree project was located in Edmond, a relatively large municipality adjacent to Oklahoma City.

The sewer system installed in the first phase of the Oak Tree project included a lift station, known as lift station no.1, and a "force main" line. The system was designed so that all sewage from the development would flow to lift station no.1 and then be pumped through the force main to the city's main line leading to the city's treatment plant. The system was constructed by Unique, the original developer, and its capacity was intended

---

law claims was final order).

[3]Our recitation of the facts is based on the district court's Memorandum Opinion, I App. 128-147, which included its findings of fact and conclusions of law. There is no material dispute about the subsidiary findings and the controversy at this stage focuses on the legal rulings below.

to be adequate to serve the entire development, which was planned to consist eventually of 1700 residential units, housing approximately 5100 people.  Edmond approved the design and in 1977 accepted the completed system.

Problems with the sewage system had begun at least as early as 1983, long before plaintiff Signature came on the scene.  In that year a study of the problems revealed excessive "inflow and infiltration," meaning that rain water periodically came into the system in a volume exceeding the system's capacity.  A second lift station was added in 1983 as had been planned earlier; this was not a response to the inflow and infiltration problem.  The sewage ran from lift station no.2 to lift station no.1, which continued to pump the effluent from the entire development.  A second study in 1985, undertaken after complaints about overflow continued to be received by Edmond, again found the problem to be inflow and infiltration.

When considering making the purchase of Oak Tree from the RTC, plaintiff Signature undertook a substantial project of "due diligence," that is an effort to learn about the project to ensure that its decision would be a well informed one.  Plaintiff's interviews with Edmond representatives and staff and plaintiff's review of the RTC's previous due diligence work yielded no information about the inflow and infiltration problems that had existed for over ten years.  Instead, plaintiff's representative was told that "all utilities had the capacity for full buildout and there were no problems."  Dist. Ct. Memorandum Opinion at 3, I App. 130.

It was not until some months after its 1994 purchase of Oak Tree that plaintiff was told of problems with the sewer system. Bob Bode, who held the title of Director of Development for plaintiff, met with representatives of Edmond regarding plans for two plats. These meetings included discussions of the necessity of building a new lift station, lift station no.3. As a result of these discussions, Mr. Bode wrote two letters which, Edmond was later to assert, committed plaintiff to replacing lift station no.1 and the force main. One of plaintiff's proposed plats was approved in November 1995, and the second was approved in January 1996. As far as the district court's opinion reveals, there was no substantial conflict between the parties for the next year or more; presumably plaintiff was developing the most recently approved plats. Soon, however, the parties were at odds.

**B**

**THE LEGAL CONTROVERSY**

By city ordinance, a planned unit development (PUD) must be completed within five years or the city must grant an extension of the PUD. If neither of these events occurs, then the zoning reverts to the previous use, which for the Oak Tree area was agricultural. Obviously then, a developer like the plaintiff has a great interest in obtaining an extension of the PUD.

The district court found that in 1997 the renewal of the PUD "was looming," from which we infer that plaintiff had requested an extension and that the request was pending

before the city council or the planning commission. Mr. Chris Ansley, general partner of plaintiff Signature, asked Bryan Coon, an engineer who had worked for plaintiff before, to develop a plan for increasing the sewer capacity. The resulting proposal was rejected by the planning commission in the summer of 1998.

At approximately the same time, plaintiff began plat development for a portion of Oak Tree that it called "the Legacy," and contracted with a builder for the planned construction of 33 units. In the summer of 1998, planning commission approval was denied. At this time, Edmond officials showed Mr. Ansley two letters written by Mr. Bode, previously mentioned, which purported to commit plaintiff to upgrading the sewer system.

Edmond hired Mr. Coon to draft a new proposal for increasing existing sewer capacity. Mr. Coon's second proposal, which would have had Edmond assume a proportionate share of the costs based on the number of homes in the development which had been built before plaintiff's projects, was also rejected by Edmond. By this time, plaintiff had become "armed with the full history of sewer problems and legal opinions on the effect of relevant [City of Edmond] Code provisions." (As will be discussed below, the district court held that under provisions of the municipal code, Edmond's acceptance of the original sewer system in 1977 made it responsible for any future improvements.) Plaintiff refused to assume responsibility for costs attributable to improvements for previously completed projects. I App. 132.

In January 1999, after a considerable delay, Edmond extended plaintiff's planned unit development for another five years. Shortly thereafter, though, Edmond decided that only 21 additional building permits would be approved, instead of the 100 that had previously been decided upon. And Edmond continued to press Signature to undertake the improvement and expansion of the original sewer system, threatening to impose a building moratorium if Signature refused. Signature then filed this lawsuit on February 23, 1999.

Edmond then imposed a moratorium on building permits, without giving notice of the length of the moratorium or of its previous decision to approve 21 additional permits before the moratorium became effective. J.W. Armstrong, a builder aligned with a rival developer, was told in a private meeting with the mayor that 21 permits would be given on a first come, first served basis. Armstrong received 16 of the 21 permits; he had only 16 lots available for building at the time.

Later in 1999 Edmond received an engineer's report on the sewer system which indicated that more than 21 additional homes could be built, but not giving a maximum number that the system could support. Edmond then lifted its building moratorium, but did not communicate its decision to plaintiff despite repeated written and oral requests and demands for information; instead, Edmond merely published a notice in a local newspaper. I App. 133. Due to the moratorium, plaintiff could not obtain financing for its next development phase, which was delayed for at least one year. *Id*.

# III

## THE DISTRICT COURT'S RULING

This case was tried to the court, apparently without objection, and the judge issued her findings of fact and conclusions of law in the form of a Memorandum Opinion. I App. 128-147. The judge noted that plaintiff had admitted that a Fifth Amendment takings claim would have been premature because it had not pursued an inverse condemnation action. Instead, plaintiff relied on the theory of a violation of its Fifth Amendment substantive due process rights, relying on *Williamson County Regional Planning Comm. v. Hamilton Bank*, 473 U.S. 172 (1985).[4] The judge noted that this court has held that under either theory the requirement of a final action by the governmental actor is identical, quoting from our decision in *Landmark Land Co. v. Buchanan*, 874 F.2d 717, 720 (10th Cir. 1989), *abrogated on other grounds, Federal Lands Legal Consortium v. United States*, 195 F.3d 1190 (10th Cir. 1999).

The district judge concluded that there was no final decision by Edmond, saying that the lack of finality was best illustrated by the fact that it was not at all clear which decision plaintiff was challenging. The judge accordingly held that the constitutional Fifth Amendment substantive due process claim was unripe. Because plaintiff had shown independent jurisdictional bases for its other claims, however, the lack of ripeness did not

---

[4]In each of the references to the Fifth Amendment, we are using that as shorthand for rights contained in that amendment as made applicable to the states under the Fourteenth Amendment.

result in lack of jurisdiction.

The district judge granted declaratory relief in favor of plaintiff, holding that Edmond was responsible for any needed improvements to the existing sewer system. Edmond's acceptance of the system from the original developer vested ownership of the system in the municipality by operation of a specific ordinance, and Edmond's responsibility for maintenance and improvements followed from its ownership, the court concluded.

The district court rejected Edmond's position that plaintiff was contractually bound by the Bode letters to upgrade the existing sewer system. The judge commented on the weakness of Edmond's evidence regarding the scope of Bode's apparent authority as agent for plaintiff but made no ultimate determination of that issue. Instead, she concluded that the letters did not in any event show an agreement on all essential terms. She further held that even if a contract had been formed, plaintiff would be entitled to rescission because of Edmond's failure to disclose essential facts, including the history of problems with lift station no.1 and its previous commitment, made to a predecessor of plaintiff, to replace lift station no.1 itself. Edmond's failure to disclose such material facts before eliciting the letters from Mr. Bode gave Edmond an "unfair advantage," the judge concluded. I App. 145.

The judge refused to grant injunctive relief as requested by plaintiff. Plaintiff had sought an injunction requiring that Edmond allow plaintiff to develop the remainder of its

property and to perform needed improvements to the sewer system.  The district judge

concluded, however, that to grant the requested injunction would usurp Edmond's right to

regulate land within its boundaries.  In the judgment subsequently entered, plaintiff

Signature's section 1983 claims were dismissed as unripe and its state law claims for

damages were dismissed without prejudice.  Plaintiff Signature appeals.

## IV

### THE DISMISSAL FOR LACK OF RIPENESS

We conclude that the district judge was correct in dismissing plaintiff's section

1983 claim without prejudice because the claim is not ripe for adjudication.  The instant

case is not materially different from the case cited by the district judge, *Landmark Land

Co. v. Buchanan*, 874 F.2d 717-22 (10th Cir. 1989).  We there held that the same ripeness

test, requiring a final action by the city, applied to a substantive due process claim as well

as to a just compensation claim.  We review *de novo* the district court's legal conclusion

that the section 1983 claim was unripe.  *Sierra Club v. United States Dept. of Energy*, 287

F.3d 1256, 1263 (10th Cir. 2002); *Coalition For Sustainable Resources, Inc. v. United

States Forest Service*, 259 F.3d 1244, 1249 (10th Cir. 2001); *Roe No.2 v. Ogden*, 253

F.3d 1225, 1231 (10th Cir. 2001).  The plaintiff has the burden of producing evidence to

establish that the issues are ripe, and we review the district court's findings of

jurisdictional facts for clear error.  *Coalition For Sustainable Resources*, 259 F.3d at

1249.  A brief statement on ripeness will suffice to guide our inquiry:

The ripeness doctrine cautions a court against premature adjudication of disputes involving administrative policies or decisions not yet formalized and felt in a concrete way by the challenging parties. The ripeness inquiry is threefold: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented."

*Roe No.2 v. Ogden*, 253 F.3d 1225, 1231 (10th Cir. 2001) *(quoting Qwest Communications Int'l, Inc. v. F.C.C.*, 240 F.3d 886, 893-94 (10th Cir. 2001)).

Plaintiff argues that its excessive regulation claim for arbitrary and capricious regulation is not an actual Fifth Amendment takings claim, but is nevertheless based on the Due Process Clause and brought under 42 U.S.C. § 1983. In explaining the difference between its excessive regulation claim and an ordinary takings claim, plaintiff Signature cites Supreme Court precedent that under the excessive regulation due process theory

> government regulation does not effect a taking for which the Fifth Amendment requires just compensation; instead, regulation that goes so far that it has the same effect as a taking by eminent domain is an invalid exercise of the police power, violative of the Due Process Clause of the Fourteenth Amendment. . . . . The remedy for a regulation that goes too far, under the due process theory, is not "just compensation," but invalidation of the regulation, and if authorized and appropriate, actual damages.

*Williamson County Reg. Planning Comm. v. Hamilton Bank*, 473 U.S. 172, 197 (1985) (footnote omitted). See Reply Brief of Signature at 15. In light of its distinct due process theory, Signature maintains that it has presented a section 1983 claim that *is* final for purposes of judicial review, contrary to the holding of the district judge here. *Id.* at 13.

Although the Court in *Williamson County* discussed a due process theory, the Court did not decide whether the theory is a valid one. Instead, the Court held that the claim in that case was not ripe, even if viewed as a due process claim rather than a takings claim. 473 U.S. at 199-200. In so holding, the Court suggested that the finality requirement is the same for due process claims and for takings claims:

> Viewing a regulation that "goes too far" as an invalid exercise of the police power, rather than as a "taking" for which just compensation must be paid, does not resolve the difficult problem of how to define "too far," that is, how to distinguish the point at which regulation becomes so onerous that it has the same effect as an appropriation of the property through eminent domain or physical possession. . . . [R]esolution of that question depends, in significant part, upon an analysis of the effect the . . . regulations had on the value of respondent's property and investment-backed profit expectations. That effect cannot be measured until a final decision is made as to how the regulations will be applied to respondent's property.

*Id*.

Following *Williamson County*, we have expressly held that the finality requirements are the same for due process claims and for takings claims. *Landmark Land Co. v. Buchanan*, 874 F.2d at 722. The facts of *Landmark* and of the instant case are very similar, and the district court relied on *Landmark* to support its holding that plaintiff's claim was not ripe. We agree.

In *Landmark*, the plaintiff planned to develop a shopping center in Del City, Oklahoma. The developer obtained a favorable zoning decision and in March 1983, it submitted a preliminary site plan to the municipality. The city responded with suggested changes, and planning proceeded over the next year with the developer submitting revised

site plans, applications for grading permits, and other proposals, all of which were approved. The developer's plans soon were frustrated, however. The developer alleged that city officials, a county official, and officers of the adjacent Air Force base combined "to delay, to impede and ultimately to prevent" the development.[5] Apparently the primary attempt to obstruct the developer's efforts was to have the city adopt as an ordinance a suggested zoning plan for areas surrounding Air Force bases, under which the proposed development would not have been permissible. The developer in that case alleged that two Air Force officers, assisted by a county commissioner, "initiated pressure tactics" to persuade the city council to adopt the zoning plan.

The city council began considering the proposed ordinance at a meeting on February 27, 1985, but immediately tabled the matter for 120 days. The city manager informed the developer that no building permits would be issued pending consideration of the proposed ordinance. The developer unsuccessfully appealed to the Del City Board of Adjustment.

Frustrated in its efforts, the developer in *Landmark* commenced an action in federal district court, contending *inter alia* that its rights to procedural and substantive due process had been violated and that the city's actions constituted a taking without just compensation. The district court dismissed the complaint without prejudice, holding that

[5]Because of the early dismissal of the case, the opinion refers only to the allegations. Like the panel in *Landmark*, we assume the truth of the allegations for purposes of analysis, without of course having any means to know whether the allegations were well founded or not.

the developer's claims were not ripe because it had not obtained a final decision from the city determining what development would be permitted. On appeal, this court affirmed.

Our court's decision first held that Landmark's takings claim was not ripe because the city had not yet indicated definitely what development would be allowed, nor had the city finally ruled out the possibility of approval of the original plans. We noted that Landmark had only been subjected to about six months of delay as a result of the defendants' actions. 874 F.2d at 721. Turning to the due process claims, we observed that "Landmark could recover on its substantive due process claim if it could show that Del City deprived it of property in an arbitrary fashion." *Id*. at 722. We went on to affirm the district court's holding that the substantive due process claim, like the other claims, was unripe:

> Before a federal court may step in and ascertain whether a local planning authority has taken property arbitrarily, however, it must allow the local authority a chance to take final action. Until it has a final action before it, a court is unable to evaluate whether property was taken and whether the local authorities' position was arbitrary. Thus, the *Williamson County* ripeness test applies with equal force to substantive due process claims.

*Id.*

We are not persuaded by plaintiff Signature's argument that the finality requirement is satisfied in this case. Plaintiff has failed to demonstrate any significant difference between the circumstances of this case and those of *Landmark*.[6] Although

---

[6]Plaintiff says that it challenged three decisions by Edmond: first, the decision to stop plaintiff from developing its Legacy plat; second, the imposition of the moratorium on issuance of building permits; and third, after the moratorium had been lifted, the continued refusal to allow plaintiff to develop and refusal to say how many building

plaintiff was subjected to somewhat greater delay than was the landowner in *Landmark*,[7] that fact standing alone does not compel a different result in this case; plaintiff has not articulated any other distinction between the cases, nor has it cited any authority to lead us to distinguish this case from *Landmark*.

Plaintiff builds its argument from the premise that its due process claim is different from a takings claim, highlighting language from the Supreme Court which seems to summarize the difference succinctly. In *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 722 (1999), the Court distinguished the claim at issue from an ordinary takings claim by saying that the plaintiff developer's claim there was "not that the city had followed its zoning ordinances and policies but rather that it had not done so."[8] We infer that plaintiff's position is that its substantive due process claim is ripe because it is based on arbitrary actions which by their nature are not akin to the steps

_____

permits would be available, which left plaintiff unable to obtain financing to proceed. (Opening Brief of Appellant at 25-26.) We understand plaintiff's position to be that all three identified decisions were part of an overall plan to coerce plaintiff into replacing or improving the sewer system serving the oldest portions of Oak Tree.

[7]Plaintiff Signature suggests several varying amounts of delay. See Opening Brief of Appellant at 14-15, 17, 18-20; Appellant's Reply Brief at 12. These different delay figures range from 16 months to 43 months suggested by plaintiff Signature. We note that the trial judge stated that "[d]evelopment has been delayed at least one year." Memorandum Opinion at 6.

[8]The Court was referring, however, not to the plaintiff developer's due process claim, but rather to its regulatory takings claim. Nevertheless, the description seems apt for the substantive due process claim at issue in this appeal, and we will assume, *arguendo*, that the language is pertinent.

involved in most land use regulation cases. Thus, where in the typical case the developer

and the local authority may find themselves engaged in a process of give and take, as

alternative plans are proposed and various regulatory factors are considered, in this case

Edmond attempted, without sound basis and at least arguably improperly,[9] to coerce

plaintiff to upgrade the sewer. We infer that plaintiff is arguing that this type of

municipal action is qualitatively different from the process involved in most land use

regulation cases and that our application of the finality requirement should take this into

account.

Language in some cases has indicated that finality is quite different in the context

of substantive due process claims such as plaintiff's. *See Eide v. Sarasota County*, 908

F.2d 716, 724 n.13 (11th Cir. 1990) ("a property owner's rights have been violated the

moment the government acts in an arbitrary manner and . . . that arbitrary action is applied

to the owner's property"). Nevertheless, we must reject this argument. First, the

argument seems to prove too much because it would seem to emasculate the finality

requirement entirely. Indeed, the quoted language from *Eide* is difficult to square with

the actual holding of that case that the finality requirement for due process claims is, if

not identical to that for takings claims, at least very similar to it. Moreover, this argument

simply cannot be squared with our holding in *Landmark* that the finality requirement for

---

[9]The district court's findings stopped short of deciding whether bad faith or other impropriety on the part of Edmond officials was present, but as noted *supra*, with respect to the Bode letters the judge did find that Edmond had an unfair advantage as a result of its non-disclosures.

due process claims is the same as that for takings claims.

In sum, because plaintiff has failed to demonstrate that the circumstances of the instant case are materially different from those with which we dealt in *Landmark*, we conclude that the district court did not err in concluding that Edmond's actions were not final and consequently that plaintiff's section 1983 claim was not ripe.

**V**

**THE DENIAL OF INJUNCTIVE RELIEF**

Plaintiff contends that the district judge erred when she refused to issue a mandatory injunction requiring Edmond to maintain and upgrade the sewer system for the older portion of Oak Tree. Opening Brief of Appellant/Plaintiff Signature at 31-34. The right Signature seeks to advance by the injunction is not its constitutionally protected property right on which it based its section 1983 claim but, as we perceive it, a right which plaintiff enjoys with all other interested residents in having Edmond perform what plaintiff describes as a "proprietary" duty.

We are unpersuaded by plaintiff's attempt to frame the issue as one of law to be reviewed *de novo*. It is well established that injunctive relief is equitable and that the district court's decision to grant or deny an injunction is reviewed for abuse of discretion. *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1231 (10th Cir. 1997). The district court's discretion is not unbounded, of course, and in particular its judgment is to be guided by "sound legal principles." *Id.* (quoting *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1975)). In addition, when a party seeks injunctive relief in

federal court against a state or local government or governmental entity, concerns of federalism counsel respect for the "integrity and function" of those bodies, *Knox v. Salinas*, 193 F.3d 123, 129-30 (2d Cir. 1999) (quoting *Schwartz v. Dolan*, 86 F.3d 315, 319 (2d Cir. 1996)); in other words, the federal court must be cautious about issuing an injunction against a municipality. And caution is especially appropriate in this case because the type of injunction sought is mandatory rather than prohibitory. *See Citizens Concerned For Separation of Church and State v. City and County of Denver*, 628 F.2d 1289, 1299 (10th Cir. 1980).

Plaintiff argues from the premise that the district court, in granting declaratory relief as sought by plaintiff, correctly determined that Edmond (and not plaintiff) is responsible for the upgrade and upkeep of lift station no.1, along with all other components of the system as of the time that Edmond accepted the system from the original developer. Plaintiff maintains that by accepting the sewer system, under its own ordinances Edmond assumed the responsibility of ensuring that the system provided adequate service, a duty that plaintiff describes as proprietary. Edmond does not dispute plaintiff's argument thus far, and consequently we also take Edmond's responsibility for upgrading the older portion of the system as a starting point.

Plaintiff goes on to argue that the court had the authority under Oklahoma law to issue an injunction to require Edmond to perform the proprietary function, citing *Grantham v. City of Chickasha*, 9 P.2d 747 (Okla. 1932), and *Mesta Park Neighborhood Ass'n v. Continental Fed. Svgs. & Loan Ass'n*, 796 P.2d 638 (Okla. Civ. App. 1990).

These cases provide little support for plaintiff's position in the circumstances of this case. In *Grantham*, the Oklahoma Supreme Court held that a *prohibitory* injunction should have been issued against the enforcement of an ordinance which unconstitutionally discriminated against merchants from out of town. This unremarkable holding says little to us about the circumstances in which a *federal* court may issue a *mandatory* injunction requiring a municipality to perform one of its duties. In *Mesta Park*, the state intermediate appellate court held that a property owner should have been enjoined from converting a single residence building into a duplex because the conversion would have been a non-conforming use under the zoning scheme applicable to the property at the pertinent time. Again, this unremarkable holding has little bearing on the issue before us.

Edmond cites *Mayor of Vicksburg v. Vicksburg Waterworks Co.*, 202 U.S. 453, 471-72 (1906), in which the Court reversed a grant of a mandatory injunction requiring a city to construct a sewer system. The Court there said that the lower court had erred in issuing the injunction because

> it had no authority to issue a mandatory injunction requiring the city to construct a sewer, irrespective of the exercise of discretion vested by law in the municipal authorities to determine the practicability of the sewer ordered, the availability of taxation for the purpose, and the like matters; and we think that the exercise of this authority is primarily vested in the municipality, and not in the courts.

*Id.* at 472.

It is difficult to assess this exact holding, especially given the tension between the expression that the lower court had "no authority" and the somewhat weaker phrase that

-20-

the authority is "primarily vested" in the municipal government, a phrase that can be read as implying that there is at least some authority in the courts. But this need not concern us. We note that the district judge expressed the same thoughts in her memorandum opinion. I App. 143. Whether or not *Vicksburg Waterworks*, which has not been overruled, stands for the proposition that the district court could not have issued the injunction plaintiff sought, it at least supports the proposition that the district judge was within her discretion in denying the relief because of her keen appreciation and understanding of the concerns expressed by our highest court ninety-six years ago, concerns which still are valid because they are at the core of our federal system.

In sum, we find no abuse of discretion in the denial of injunctive relief.

**VI**

**THE STATE LAW CLAIMS FOR DAMAGES**

Finally, we address plaintiff's contention that the district court erred in denying relief on its state law claims for damages. In the briefs, these claims are described simply as "claims for damages under the Oklahoma Constitution, and the City's breach of its obligation under its ordinances." The district court disposed of the state law claims quite briefly, at best, with only two statements which may, or may not, have been meant to address the state claims in addition to the federal claims. First, the district judge said that because plaintiff's constitutional claims (apparently meaning only the federal constitutional claims) were held "barred for lack of ripeness or lack of proof, Signature is not entitled to recover damages." Memorandum Opinion at 19. The judge's opinion also

-21-

stated that: "Signature retains its property and . . . has failed to establish any final decision restricting its development. It is therefore not entitled to damages." *Id.* at 20. Finally, the judge said that "having failed to establish a constitutional claim, Signature's prayer for monetary damages is DENIED." *Id*. In the separate judgment entered by the court the state law claims were dismissed without prejudice.

The argument presented in support of plaintiff's state law claims is sparse. Plaintiff asserts that Oklahoma law recognizes a right of action for deprivation of property rights not amounting to a taking and cites *City of Oklahoma City v. Daly*, 316 P.2d 129 (Okla. 1957). That case involved physical injury to property caused by the use of heavy equipment on the adjacent right of way. We do not find that it supports plaintiff's position in the circumstances of this case.

Although plaintiff argues that Oklahoma law, "like federal law," permits recovery of damages for violations of property rights, plaintiff says nothing about whether, like federal law, Oklahoma law requires that the governmental action be final, even though the district court seems to have implicitly assumed this to be the case from the summary disposition of the state law claims. Indeed, other than the inapposite case on physical injury to real property, plaintiff provides no authority to support its contention that Oklahoma law provides a damages remedy on the facts presented. We are satisfied that the ripeness requirement is the same for the state law claims as it is for the federal claims. *See April v. City of Broken Arrow*, 775 P.2d 1347, 1354-56 (Okla. 1989).

We conclude that plaintiff Signature has failed to show that the district court erred

in disposing of the state law claims for damages.

## Conclusion

The judgment of the district court is

AFFIRMED.