William **NEWLAND**, Paul Newland, James Newland, Christine Ketterhagen, Andrew Newland, and Hercules Industries, Inc., Plaintiffs,

v.

Sylvia M. **BURWELL**, in her official capacity as Secretary of the United States Department of Health and Human Services; Thomas E. Perez, in his official capacity as Secretary of the United States Department of Labor; Jacob Lew, in his official capacity as

---

Secretary of the United States Department of the Treasury; United States Department of Health and Human Services; United States Department of Labor; and United States Department of the Treasury; Defendants.

Civil Action No. 1:12–cv–1123

United States District Court, D. Colorado.

Signed March 16, 2015

David Andrew Cortman, Alliance Defending Freedom, Lawrenceville, GA, Erik William Stanley, Alliance Defending Freedom, Leawood, KS, Gregory S. Baylor, Matthew Scott Bowman Steven H. Aden, Alliance Defending Freedom, Washington, DC, Kevin H. Theriot, Alliance Defending Freedom, Scottsdale, AZ, Michael Jeffrey Norton, Alliance Defending Freedom, Greenwood Village, CO, for Plaintiffs.

Michelle Renee Bennett, U.S. Department Of Justice, Washington, DC, for Defendants.

## MEMORANDUM OPINION

Kane, Senior U.S. District Court Judge

William Newland, Paul Newland, James Newland, Christine Ketterhagen, and Andrew Newland (the "Newlands") and Hercules Industries, Inc., their closely-held family corporation (collectively the "Plaintiffs"), filed this suit seeking relief from the Defendants' actions in implementing the Patient Protection and Affordable Care Act, Pub.L. No. 111–148, 124 Stat. 119 (March 23, 2010) and Pub.L. No. 111–152 (March 30, 2010) ("ACA"). Specifically, the Plaintiffs objected to the regulations enforcing a portion of the statutory Preventive Services Mandate, 42 U.S.C. §§ 300gg–13(a)(4), which would have required them to pay for or otherwise facilitate insurance coverage for abortifacient drugs, contraception, sterilization, and related education and counseling. *See* 26 C.F.R. § 54.9815–2713(a)(1)(iv); 29 C.F.R. § 2590.715–2713(a)(1)(iv); 45 C.F.R. § 147.130(a)(iv) (collectively, along with the HRSA guidelines requiring no-cost sharing coverage of FDA-approved contraception methods and the statutory penalties for non-compliance, the "Contraception Mandate").

On July 27, 2012, I ordered a preliminary injunction temporarily prohibiting Defendants from enforcing the Preventive Services Mandate against Plaintiffs, including the substantive requirement imposed in 42 U.S.C. § 300gg–13(a)(4), the application of the penalties found in 26 U.S.C. §§ 4980D & 4980H and 29 U.S.C. § 1132, and any determination that the requirements were applicable to Plaintiffs.

Preliminary Injunction Order (Doc. 30) at 17–18.

Defendants appealed the entry of the preliminary injunction to the Tenth Circuit, which affirmed my decision. Relying on its en banc decision in *Hobby Lobby Stores, Inc. v. Sebelius*, the court found that Hercules was likely to succeed on the merits of its RFRA claim. Order and Judgment (Doc. 58) at 6–7. The Tenth Circuit also found that my determinations that Hercules would suffer irreparable harm, that the balance of harms tipped in favor of Hercules, and that the public interest supported the preliminary injunction were not an abuse of discretion. *Id.* at 7–9. The Tenth Circuit remanded the case with instructions to abate further proceedings pending the Supreme Court's resolution of *Burwell v. Hobby Lobby Stores, Inc.*, another challenge to the Contraception Mandate.[1] *Id.* at 9–10.

On June 30, 2014, the Supreme Court issued its decision in *Hobby Lobby*, concluding that the Contraceptive Mandate, as applied to closely held corporations, violates the Religious Freedom Restoration Act ("RFRA"). Accordingly, I reinitiated proceedings to resolve Plaintiffs' challenge to the Contraceptive Mandate.

On remand, the parties agree that a permanent injunction should be entered in favor of Plaintiffs on their RFRA claim, but they disagree as to the precise nature of that judgment. Specifically, the parties dispute the scope of the permanent injunction to which Plaintiffs are entitled.

Plaintiffs suggest that I should simply convert the preliminary injunction into a permanent injunction. Defendants contend that the language of the preliminary injunction is unnecessarily broad and

should be more closely tethered to the holding in the Supreme Court's *Hobby Lobby* decision. Although the permanent injunction order accompanying this memorandum resolves these issues, I write separately to address more thoroughly the parties' disputes and the basis for the permanent injunction entered.

I begin with a brief discussion of the law of injunctions before summarizing the pertinent portions of the Tenth Circuit's and the Supreme Court's *Hobby Lobby* decisions. I then summarize the parties' specific disagreements regarding the permanent injunction and resolve each point of contention *seriatim*.

## LEGAL BACKGROUND

### *Law of Injunctions*

It is well established that an injunction is a form of equitable relief. *See Signature Prop. Int'l Ltd. P'ship v. City of Edmond*, 310 F.3d 1258, 1268 (10th Cir. 2002) (citing *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1231 (10th Cir.1997)). Consequently, my discretion in formulating an injunction is informed by equitable principles. *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 752 (10th Cir.2011) (citing *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 962 (10th Cir.2002)). My authority to provide injunctive relief survives the discontinuance of the illegal conduct giving rise to the need for an injunction, *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1201 (10th Cir.2009) (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)). Furthermore, the prevailing party "has a right to expect that prospective relief will be maintained unless the injunction is va-

---

1. After the Tenth Circuit issued its decision in *Hobby Lobby Stores, Inc. v. Sebelius*, Sylvia Burwell replaced Kathleen Sebelius as the Secretary of Health and Human Services, and she was substituted as the Petitioner on appeal to the Supreme Court.

cated or modified by the court." *Dowell by Dowell v. Bd. of Educ. of Okla. City Pub. Sch., Indep. Dist. No. 89,* 795 F.2d 1516, 1521 (10th Cir.1986) (citations omitted).

▉ Discretion is not, however, without limits. The injunction "must be narrowly tailored to remedy the harm shown." *ClearOne Commc'ns, Inc.,* 643 F.3d at 752. The order entering the injunction must state the reasons why the injunction is issued, specifically state the terms of the injunction, and describe in reasonable detail the act or acts restrained or required. Fed.R.Civ.P. 65(d). Furthermore, where an injunction implicates an act of Congress, I cannot "ignore the judgment of Congress, deliberately expressed in legislation." *United States v. Oakland Cannabis Buyers' Co-op.,* 532 U.S. 483, 497, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001). Even where I have cause to issue an injunction regarding a congressional act, Congress is free to change the terms of the underlying substantive law, and "it is those amended laws—not the terms of past injunctions—that must be given prospective legal effect." *Biodiversity Assoc. v. Cables,* 357 F.3d 1152, 1165 (10th Cir.2004). The same is not true with respect to changes in administrative regulations, which are evaluated in the exercise of discretion.

▉▉ Finally, an injunction "must be obeyed until it is reversed, even if it is erroneously issued, and in some instances even if the court that issued the injunction lacked jurisdiction of the subject matter." Dan B. Dobbs, *Law of Remedies: Damages—Equity—Restitution* 105 (2007). Nevertheless, a party may seek to modify or dissolve an injunction in the court where the injunction was entered if "a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." *Horne v. Flores,* 557 U.S. 433, 447, 129

S.Ct. 2579, 174 L.Ed.2d 406 (2009) (quotation omitted). In such an event, "the party seeking relief bears the burden of establishing that changed circumstances warrant relief." *Id.* A district court will modify or dissolve an injunction on the basis of a change in underlying statutes, but it is the court, not the parties, that is charged with the authority to do so. *See Miller v. French,* 530 U.S. 327, 341–42, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000). The authority to modify or dissolve an injunction is one of the pivotal reasons why courts retain jurisdiction over such equitable proceedings.

With these principles in mind, I turn to the pertinent portions of the Tenth Circuit's and the Supreme Court's *Hobby Lobby* decisions.

### *Hobby Lobby*

The owners of Hobby Lobby Stores, Inc. and Mardel, Inc. filed suit challenging the regulations imposing the Contraceptive Mandate under RFRA, the Free Exercise Clause of the First Amendment, and the Administrative Procedure Act. Like Hercules, both Hobby Lobby and Mardel are closely-held corporations whose owners run them according to Christian principles. *Hobby Lobby Stores, Inc. v. Sebelius,* 723 F.3d 1114, 1120 (10th Cir.2013). Like the Newlands, the Greens (the owners of Hobby Lobby and Mardel) objected to the Contraceptive Mandate because it violated their religious beliefs. *Id.* at 1120–21. After the district court denied their motion for a preliminary injunction, Hobby Lobby, Mardel, and the Greens appealed to the Tenth Circuit. *Id.* at 1125. They sought, and were granted, initial en banc consideration of their appeal. *Id.*

The Tenth Circuit overturned the district court's decision, finding that Hobby Lobby and Mardel had established a strong likelihood of success on the merits

of their RFRA claim.[2] *Id.* at 1121. As an initial matter, the Tenth Circuit concluded that the corporations had standing to challenge the Contraceptive Mandate, but it did not reach a decision regarding the owners' individual standing to challenge the Mandate. *Id.* at 1126.

Turning to the merits of Hobby Lobby's and Mardel's RFRA claim, the Tenth Circuit concluded that a closely-held corporation can exercise religion, within the scope of RFRA, *Id.* at 1132. The Tenth Circuit then concluded that the Contraceptive Mandate substantially burdens a corporation's exercise of religion where the corporation is closely-held, the corporation's owners unanimously share religious beliefs by which they govern the corporation, and the Contraceptive Mandate is contrary to the owners' sincerely held religious beliefs. *Id.* at 1138–43.

Having determined that Hobby Lobby and Mardel met their burden of establishing a substantial burden, the Tenth Circuit next considered whether the government had met its burden of showing that the Contraceptive Mandate serves a compelling government interest and that the challenged regulation constitutes the least restrictive means of serving that interest. As a threshold matter, the Tenth Circuit held that the Contraceptive Mandate did not serve a compelling government interest, because the government's asserted interest in enforcing the Contraceptive Mandate against Hobby Lobby and Mardel was too broadly formulated. *Id.* at 1143. The court also held that the existence of numerous exemptions from the Contraceptive Mandate undermined the government's argument that it had a compelling interest in enforcing the Contraceptive Mandate against Hobby Lobby. *Id.* at

1143–44. Furthermore, the Tenth Circuit held that, even if there was a compelling interest, the Contraceptive Mandate was not the least restrictive means of serving that interest. *Id.* at 1144. Accordingly, the Tenth Circuit remanded the case to the district court for further consideration of the remaining preliminary injunction factors.

The Supreme Court upheld the Tenth Circuit's en banc decision, holding that the regulations imposing the Contraceptive Mandate, as applied to closely-held corporations with sincerely held religious beliefs contrary to the Mandate's requirements, violated RFRA. *Burwell v. Hobby Lobby Stores, Inc.,* — U.S. —, 134 S.Ct. 2751, 2759, 189 L.Ed.2d 675 (2014). The basis for the Supreme Court's decision was not, however, identical to that of the Tenth Circuit.

Similar to the Tenth Circuit, the Supreme Court held that a closely-held corporation can exercise religion under RFRA, *id.* at 2775, and that the Contraceptive Mandate violated Hobby Lobby's sincerely-held religious beliefs. *Id.* at 2779. Unlike the Tenth Circuit, the Supreme Court did not determine whether the Contraceptive Mandate furthered a compelling governmental interest. *Id.* at 2780. Instead, the Supreme Court assumed the Mandate advanced a compelling interest, but it held that the Mandate was not the least restrictive means of furthering that interest. *Id.* In making this finding, the Court relied heavily on the existing accommodation for non-profit organizations with religious objections, finding that such an accommodation "does not impinge on [Hobby Lobby's] religious belief that providing insurance coverage for

---

**2.** The Tenth Circuit declined to reach the Plaintiffs' First Amendment claim. *Hobby*

*Lobby,* 723 F.3d at 1121 n. 2.

the contraceptives at issue here violates [its] religion, and it serves HHS's state interests equally well." *Id.* at 2782.

With these principles in mind, I turn to this case and the parties' arguments regarding the scope of and the authority for the injunction.

## DISCUSSION

Defendants raise three primary objections to Plaintiffs' proposed permanent injunction. First, they argue that because the Supreme Court's *Hobby Lobby* decision was limited to the application of the *2013* contraceptive mandate regulations to closely-held corporations, the injunction should only preclude the government from enforcing the *2013* contraceptive mandate regulations against Hercules Industries, Inc. In other words, Defendants suggest that the government should be able to revise its Contraceptive Mandate regulations and impose them on all of the Plaintiffs without violating the terms of the permanent injunction. Second, Defendants argue that because the *Hobby Lobby* decision was limited to the rights of the closely-held corporation and not the rights of the closely-held corporation's ownership, the injunction should be limited to Hercules. Finally, Defendants argue that the injunction should be premised on the Supreme Court's decision in *Hobby Lobby* and Defendants' consent.

I discuss each issue *seriatim.*

### 1. Scope of the Injunction

■ The parties misapprehend the appropriate scope of a permanent injunction. Plaintiffs contend Defendants should be permanently enjoined from enforcing the Contraceptive Mandate against them, without making any specific allowance for the possibility that the government could re-formulate the Contraceptive Mandate in compliance with the Supreme Court's deci-

sion in *Hobby Lobby.* Defendants argue that the injunction should be limited to the Contraceptive Mandate as it was struck down by the Supreme Court in *Hobby Lobby,* effectively allowing the government to unilaterally circumvent the permanent injunction without first seeking an order modifying or dissolving the injunction. These arguments fail to recognize the binding decisions of the Tenth Circuit and Supreme Court and the fundamental principles of injunctive relief.

Plaintiffs' proposed injunction fails to account for the limited nature of the Tenth Circuit's and Supreme Court's *Hobby Lobby* decisions. The Tenth Circuit and the Supreme Court limited their decisions regarding the validity of the Contraceptive Mandate to the regulations enforcing that mandate. Neither court determined that the statute underlying the Mandate violated the RFRA rights of the corporate plaintiffs or, *a fortiori,* the RFRA rights of the individual owners. Moreover, Plaintiffs in this case primarily sought relief from the regulations enforcing the Contraceptive Mandate. They sought relief from the Preventive Services provision of the ACA only "to the extent Defendants have used [the statute] to mandate coverage to which Plaintiffs and other employers have religious objections." Accordingly, the injunction is limited to the Contraceptive Mandate regulations, and does not extend to the statutory Preventive Services Mandate.

Additionally, although the Tenth Circuit based its decision on its determination that the government lacked a compelling interest in enforcing the Contraceptive Mandate, the Supreme Court's decision was based on its determination that the Contraceptive Mandate was not the least restrictive means of accomplishing the government's interest. The Supreme Court assumed without deciding that the Contra-

ceptive Mandate furthered a compelling interest. This distinction is significant. If there were no compelling interest, then regardless of whether the government provided an accommodation for closely-held corporations, the Contraceptive Mandate would still violate RFRA. Because, however, the Supreme Court's decision focused on the least restrictive means determination, it expressly held that the government could provide accommodations that would bring the Contraception Mandate into compliance with RFRA.

Defendants' proposed injunction fails to account for the fundamental principles of injunctive relief. If the injunction is to fulfill its equitable purpose, it must provide meaningful relief to Plaintiffs. The government's proposed injunction would, in effect, allow the government to unilaterally modify or dissolve the injunction without first demonstrating a change in circumstances justifying such modification or dissolution. That cannot be.

As with any other injunction, the government may seek to modify or dissolve the injunction entered in this case if "a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." *Horne,* 557 U.S. at 447, 129 S.Ct. 2579 (quotation omitted). The government, however, bears the burden of justifying modification or dissolution (i.e., that a regulation enforcing the Contraceptive Mandate does not violate Hercules' RFRA rights).

As the Supreme Court held, the government may revise its Contraceptive Mandate regulations to bring them into compliance with RFRA. It is not, however, the government's right to unilaterally determine that it is entitled to enforce any such regulations against Plaintiffs. The injunction makes clear that it will remain in full force and effect until I order otherwise, and the injunction is neither dissolved nor modified by the unilateral action of either party.

Finally, the issues not decided by the Supreme Court and the Court of Appeals did not vanish. Namely, questions remain concerning, *inter alia,* the individual owners' standing and whether the First Amendment claims of Plaintiffs are enforceable. Should the government seek to dissolve the injunction, Plaintiffs may seek to re-assert these claims as an additional defense to any prospective enforcement of revised regulations enforcing the Contraceptive Mandate.

### 2. Parties Bound by and Benefiting from the Injunction

Both the Tenth Circuit and the Supreme Court declined to determine whether the owners of a closely-held corporation have standing in their own right to assert a RFRA claim. Plaintiffs argue that the injunction should extend to both Hercules and the Newlands, while Defendants argue that the injunction should be limited to Hercules only.

As both parties acknowledge, there is no practical difference at this time in terms of the result: whether or not the injunction applies to the Newlands, the government will be enjoined from violating Hercules' RFRA rights, and the very essence of Hercules' RFRA rights are the rights of the Newlands. Accordingly, and in following the Tenth Circuit and the Supreme Court, the injunction is "limited" to Hercules; the claims of the individual owners remain unresolved.

### 3. Authority for the Injunction

Without justification, Defendants argue that the injunction should be premised on the Supreme Court's *Hobby Lobby* decision and "the defendants' consent." This

proposed arrogation of authority offends the very structure of our government, and ignores the exclusive jurisdictional authority of the United States District Court to provide such relief. Notwithstanding Defendants' suggestion to the contrary, the injunction is entered under the jurisdictional authority of the United States District Court and it remains in full force an effect unless and until modified or dissolved by the District Court upon a showing of just cause or by order entered by the Court of Appeals following review.

## CONCLUSION

The permanent injunction against Defendants shall issue in favor of Hercules Industries, Inc. The claims of William Newland, Paul Newland, James Newland, Andrew Newland, and Christina Ketterhagen are abated pending further action by the Court.